## JULIUS P. SHAW *vs.* EDWARD P. McGREGORY & others.

In an action in which the plaintiff sought to avoid the effect of the statute of limitations by evidence that the defendant had not been within the Commonwealth since the time when the cause of action accrued, it was admitted that at that time he resided in another state which he soon after left for the west. *Held*, that the admission of the testimony of several witnesses, that they had not seen the defendant in this Commonwealth since that time, gave him no ground of exception.

A deponent in his answers referred to certain books, and made them part of his answers. The books were not attached to the deposition, but were inclosed with it in a wrapper, sealed up and directed to the clerk of the court, who broke the inclosure, took the deposition and books therefrom at the trial, and kept them in his custody. *Held*, that they were admissible in evidence.

In an action on a promissory note given in the name of a firm, by one of its members, to the plaintiff, the consideration of which was in part goods sold to a former firm, composed of different members, although carrying on the same business, there was evidence that, at an interview lasting an hour, at which the plaintiff's account was presented and examined and the note signed therefor, J. S., a member of both firms, was present, although he did not join in the conversation and had no charge of the financial business of the firms; and that the account was made out to the new firm, although many of the items were due from the old firm; but there was no evidence of any intentional deception on the part of the plaintiff; there was no instruction given to the jury on the effect of a misrepresentation by the plaintiff, but none was specifically requested. *Held*, that the evidence justified the jury in finding an assent by J. S. to the giving of the note; and that he had no ground of exception.

If a new firm, formed from an old firm by the retirement of a member, succeeds to and continues the business of the old firm in the same place, slight evidence is sufficient to warrant the inference that it has assumed the liabilities of the old firm; and if it has assumed such liabilities, a partner has the same right to give partnership notes in payment of them as he has to give such notes in payment of the debts of the new firm.

The objection that authority in a partner to give a partnership note is not incident to the business of a firm, if not made at the trial, cannot be taken at the argument of a bill of exceptions.

CONTRACT against Edward P. McGregory, John C. Stanton and David N. Stanton, on two promissory notes, payable in June and July 1858, and alleged to have been given by the defendants as partners under the name of E. P. McGregory, Stanton & Company. Writ dated August 29, 1867. McGregory made no defence. The Stantons alleged in their answer that the notes were without consideration, and set up the statute of limitations.

At the trial in the superior court, before *Dewey,* J., the plaintiff contended that the defendants had not resided and been within this Commonwealth for the period of six years since the maturity of the notes and before the commencement of this action. And " it was proved or admitted that the notes were executed by McGregory at Stafford, Connecticut, where they bore date ; that all of the defendants then resided there ; and that the Stantons soon afterwards left Connecticut and went to the west."

The plaintiff, McGregory, Charles C. Shaw and Andrew Pinney testified, against the objection of the defendants, that they knew the Stantons, and that they had not seen them or heard of their living in this Commonwealth since the autumn of 1858. The defendants introduced evidence to show that they or one of them had been residents of Massachusetts from the end of 1859, or the beginning of 1860, to the commencement of this action.

" The plaintiff offered in evidence the deposition of Lewis Rice. The defendants objected to its introduction, because it appeared from the answers of the deponent that certain books called registers were referred to by him and made a part of his answers, and yet no such books were annexed to the deposition. They also objected, for the same reason, to the reading of said answers to the jury, and to the introduction of any books to the jury. But the objections were overruled, the deposition was introduced and read, and the books were also introduced and submitted to the jury. The books were ordinary hotel registers, five in number, each fifteen inches long and ten inches wide, and about one inch thick, and were inclosed in an envelope or wrapper, together with the deposition, and all sealed up together and directed to the clerk of the court, but the books were not annexed to the deposition in

due form. The inclosure was broken by the clerk, and the books and deposition taken therefrom by him at the trial, and they remained in his custody till introduced as evidence."

The defendants requested the judge to instruct the jury " that if either of the defendants had been a resident within this Commonwealth for six years prior to the commencement of this action and after said cause of action accrued, that would constitute a good defence in behalf of both of the defendants to this action : ' but the judge declined so to rule.

The plaintiff offered evidence in reference to the execution of the notes, to the effect " that he met all of the defendants at Stafford, May 17, 1858; that the consideration of the notes was goods which had been previously sold and delivered to the defendants by him, and mostly upon the order of David N. Stanton; that at this interview, which occupied almost an hour, he had a written statement of his account; that the same was made out to the firm of E. P. McGregory, Stanton & Co.; that this account was examined by David N. Stanton and McGregory, that after some conversation relative to the same, and as to whether one or two notes should be given in settlement of the account, it was agreed that two notes should be given; that thereupon the two notes in suit were written, examined by David N. Stanton, who said they were right, signed by McGregory in the presence of the other defendants, and delivered to the plaintiff; that John C. Stanton was present and in hearing during all of this interview, but took no part in the conversation; that none of the goods which formed the consideration of the notes had ever been ordered by him, but all by his firm; that the greater part of the goods which formed the consideration of the notes had been sold by the plaintiff to the firm of McGregory, Stanton, Rand & Co., and were charged upon his books to said firm, which was composed of the three defendants and one Rand; that he had never personally seen Rand; and that a part of said goods had been sold to the subsequent firm of McGregory, Stanton & Co.; but that, in the statement which he presented at said interview when John C. Stanton was present, the goods were all charged to the latter firm, who were the successors of the prior firm."

"It was also proved or admitted that the business of said firms was quarrying stone at Stafford; that the business of John C. Stanton was superintending the work at the quarry, and that David N. Stanton kept the books and attended to the financial matters of the company."

Upon this evidence, the defendants requested the judge to instruct the jury "that a note given by a member of the defendants' firm, the consideration of which was in part the indebtedness of a prior and different firm, was not binding upon the former unless it was given by the authority and consent of all the partners, and that the testimony introduced by the plaintiff was not competent or sufficient in law to show, or to authorize the jury to find, that John C. Stanton had authorized or assented to the giving of these notes."

The judge declined so to instruct the jury, but did instruct them "that a note given in the name of one firm, for a debt due from a prior firm, composed in part of different members, would not be binding unless given with the authority or consent of all the members of the latter firm; but that if there was an agreement by which the second firm had assumed the debts of the prior firm, or if, whether there was any such agreement or not, all the members of the present firm assented to the giving of a note for the debt of such prior firm, such note thus given would be binding, and it was for the jury to say in this case whether or not the notes in suit were given in pursuance of such an agreement, or with the assent of all the partners, including John C. Stanton."

The jury returned a verdict against all the defendants, and they alleged exceptions.

*E. Merwin*, for the Stantons.

*J. G. Allen*, for the plaintiff.

COLT, J.   1. It was proved or admitted that the defendants were residents of Connecticut at the time the notes in suit were given, and that they soon after left that state and went west. The testimony therefore of the plaintiff, and of the witnesses Shaw, Pinney and McGregory, as to not seeing the defendants in this state, even if it had no legal tendency to establish the issue, does not appear to have misled the jury or been prejudicial to the defendants. *Richards* v. *Doe*, 100 Mass. 524.

2. The exception to the admission of the deposition of Rice, with the hotel registers therein referred to, is not well taken. The books with the deposition were together inclosed, sealed up and directed to the clerk of the court by the magistrate, the envelope in which they were placed was opened by the clerk, and the contents were taken therefrom and retained by him, until introduced as evidence. This leaves no room to question the identity of these books, or to doubt that they are in the same condition as when produced before the magistrate. If not the best, it is one method of annexation, within the meaning of the statute, which requires the magistrate's certificate to be annexed to the deposition, (Gen. Sts. *c.* 131, § 26,) and is not open to objection when the facts show that the security aimed at has been practically attained. In *Savage* v. *Birckhead*, 20 Pick. 167, it was held that a deposition, taken under a commission, which was not annexed to the commission, or the interrogatories, was sufficiently connected by the envelope and official seal, and as much so as if attached by a ribbon. In either case there might be fraud or mistake; but in the absence of any suggestion of it, the objection cannot prevail.

3. The ruling requested in regard to the effect of a residence of either of the defendants within this Commonwealth for the required time, upon the rights of the others, became immaterial by the finding of the jury that neither of the defendants had resided here.

4. The proposition, that a note given by a member of a partnership in the name of the firm, for the debt of a prior firm, composed of different members, would not be binding on the new firm, unless given with the authority or consent of all its members, was agreed to by the parties, and the trial proceeded on that ground. But the defendants insisted that the evidence here relied on was not competent or sufficient in law to justify a finding that John C. Stanton authorized or assented to the giving of these notes. The judge declined so to rule, and submitted the question to the jury. We are of opinion that there was sufficient and competent evidence to justify the jury in finding the assent of all the members. John C. Stanton was present at the interview

when a written statement of the plaintiff's account was produced and the notes were given. The account was examined by the other members of the firm, and conversation was had in reference to it. The two notes were agreed to be given, and were then written, examined and signed. The interview lasted for an hour. John C. Stanton was in hearing all the time, making no objection. This is certainly competent evidence of his intelligent approval of a transaction, in which it is hardly possible that he should not have known that he was interested. The facts, that he took no part in the conversation, that in the division of the partnership labors another member of the firm had kept the books and attended to the financial matters, and that he ordered none of the goods contained in the account, affect the weight of the evidence, and are proper for the consideration of the jury on the question whether they do show assent to an act which he knew the purport of. Nor is it sufficient reason for rejecting the evidence, that the account produced was made out wholly in the name of the last firm; the dates and items which it contained would sufficiently exhibit that portion which was the proper debt of the prior partnership. It does not appear that there was on the part of the plaintiff any intentional deception practised, or that any of the defendants were in fact deceived. It is true, that no instructions were given as to the legal effect of a misrepresentation of the plaintiff upon the alleged assent; but no specific instructions were requested upon this aspect of the case, and it is not to be assumed that the required assent, if obtained by misrepresentation, was understood by the jury to be sufficient. Such an apparent assent, under the instructions actually given, was not an assent within their fair meaning.

5. It is further objected that the jury under the instructions given were permitted to find for the plaintiff, if they found only that there was an agreement by which the second firm had assumed the debts of the prior firm; when there was not only no evidence in the case of such agreement, but if such an agreement in fact had been proved, it would still be necessary to prove the assent of all the partners to the giving of a negotiable note for such debt. No specific direction was requested in reference to the alleged deficiency of proof, and although there are cases

where it is the duty of this court to set aside a verdict for an omission to give the instruction that there is no sufficient evidence, even when it was not requested, yet in such cases the want of evidence must clearly appear by the bill of exceptions. *Brightman* v. *Eddy*, 97 Mass. 478, 481. There is no such clear want of evidence in support of this proposition apparent here. There was evidence that the defendants were the successors of the firm from which only one partner had retired, and this implies that they were severally liable for its debts; had taken possession of its assets; and were continuing the same business in the same place. Under such circumstances, comparatively slight evidence would tend to the inference that they had assumed the debts of the old firm, and such evidence is found in the fact that the plaintiff's account, which was presented and received by them without comment or objection, was wholly made out to the last firm, though containing items due from both concerns. Besides, we are not sure that the bill of exceptions reports all the evidence bearing upon this point.

As to the remaining part of the objection, it is plain that if, between the retiring partner or creditors, and the members who remain in the firm, an agreement is made to assume the outstanding debts, then such debts become the proper debts of the new firm, and the relation of the several members to them is the same as to other liabilities incurred in the business, and does not require their individual assent to notes given in payment.

6. The point that the giving of a promissory note was not incident to the peculiar business of this partnership was not made at the trial. The nature of the business was proved indeed, but it seems to have been for the purpose of showing that one of the Stantons had charge of the books, while the other superintended the quarry, as affecting their knowledge of the nature of the plaintiff's demands. It is said that a partnership organized for quarrying stone, like one for mining or farming purposes, will not as incident thereto confer the power upon its members to make negotiable notes in the name of the firm. But such power may always be shown by express authority, or implied from the known habits of business of the firm in question. If the suggestion now

made had been made at the trial, the plaintiff would not have been deprived of an opportunity to meet it by additional proof, and we do not think it is now open to the defendants.

*Exceptions overruled.*