29 N. Y. Supp. 732; Cleghorn v. N. Y. Cen. & H. River R. R. Co., 56 N. Y. 44, 15 Am. Rep. 375. But there remains the question of compensatory damages. Compensatory damages embrace the determination of the extent of the injury, insult, invasion of the privacy, and interference with the comfort of the plaintiff and his family. Woodruff, J., in Ives v. Humphreys, 1 E. D. Smith, 196. Under the circumstances, it strikes me that $150, found by the jury by way of compensation, cannot be said by an appellate court to be excessive.

The point is made that the defendant is not liable. It is liable if the servants' acts were commanded or authorized by it. And it is held that "the authority may be express or implied, and that a previous command may be proved, either by direct evidence or by any legal evidence which will satisfy the jury." Welsh v. Cochran, 63 N. Y. 181, 184, 20 Am. Rep. 519. There is in evidence an order from the defendant to its servants that they should collect $5.40 or remove the meter, and a return thereon that it had been removed. This was produced by the defendant on the trial, and therefore, presumably, it had been returned to it by its servants. Even though the master had given no explicit directions to break open the door in order to make the removal, a master may be held liable for the acts of a servant within in the general scope of his employment, while about his master's business, even though the act be "negligent, wanton, or willful." Grimes v. Young, 51 App. Div. 239, 64 N. Y. Supp. 859, per Willard Bartlett, J., citing Mott v. Consumers' Ice Co., 73 N. Y. 543; Ochsenbein v. Shapley, 85 N. Y. 214; Burns v. Glens Falls R. R. Co., 4 App. Div. 426, 38 N. Y. Supp. 856; Higgins v. Watervliet Turnpike Co., 46 N. Y. 23, 7 Am. Rep. 293; Meehan v. Morewood, 52 Hun, 566, 5 N. Y. Supp. 710, affirmed 126 N. Y. 667, 27 N. E. 854. Conceding that the transportation corporation law (section 68, c. 566, p. 1149, Laws 1890) gave to the defendant the right of entry, yet the abuse thereof by breaking open the door constituted it a trespasser ab initio. The Six Carpenters' Case, 8 Co. 146a; Adams v. Rivers, 11 Barb. 390.

The judgment should be affirmed, with costs. All concur.

---

### CEBALLOS et al. v. MUNSON S. S. LINE.

(Supreme Court, Appellate Division, Second Department. April 15, 1904.)

1. CONTRACT—PLEADING—VARIANCE—WAIVER.

　　Where plaintiff testified without objection as to the time it was agreed the contract sued on should continue, the court was justified in submitting to the jury whether the agreement was as he stated, without regard to the pleading on that point.

2. SAME—REASONABLENESS—VALIDITY.

　　A contract whereby each party agreed to pay to the other a commission on the number of cattle he carried to Cuba was not so unreasonable as to be nonenforceable.

3. SAME—NOVATION—EVIDENCE.

　　Evidence of a bill of sale by an individual to a corporation of all the business of a steamship line, the retention of the chief ownership of the business by the individual, accountings rendered by the corporation under a contract by the individual with the plaintiffs with reference to ship-

ping, acceptance by them of payments thereunder, and the bringing of a suit against the corporation on the contract justified the submission to the jury of the question whether there had been a novation, whereby the corporation became liable on the contract.

4. SAME—CONSIDERATION.
A contract to substitute a third party for one of the parties to a prior contract is supported by a sufficient consideration.

5. SAME—RESTRAINT OF TRADE.
A contract whereby each party agreed to pay to the other certain percentages on all freights earned by him as long as either should carry any cattle to Cuba, no provision being made as to maintaining rates or preventing competition, no prices being fixed, and dealings not being confined to any combination of persons, was not in violation of Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], prohibiting contracts in restraint of trade.

6. SAME—EVIDENCE.
In an action on a contract concerning the shipment of freight, evidence *held* insufficient to sustain a finding that the contract was to continue as long as either party continued to carry cattle to Cuba.

Appeal from Special Term, Kings County.

Action on a contract by Juan M. Ceballos and others against the Munson Steamship Line. From a judgment of nonsuit (85 N. Y. Supp. 530), plaintiffs appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

John Howard Corwin, for appellants.
Everett P. Wheeler, for respondent.

JENKS, J. I think that the nonsuit cannot be sustained. The learned court, by consent of counsel, submitted to the jury as the second question:

"Was the agreement made between the plaintiffs' predecessor and the defendant's predecessor, in October, 1897, to continue so long as Walter D. Munson should carry cattle to Cuba?"

The learned court, without objection, charged the jury that, if they answered this question in the affirmative, they should pass to the further question whether the defendant took over the contract. The testimony of Mr. Rohl, admitted without objection as to variance, justified the submission of this question to the jury. It is, therefore, not essential that we should discuss the terms of the contract as pleaded in the light of its alleged uncertainty; for its termination was fixed by the cessation of Mr. Munson to carry cattle to Cuba.

It cannot be urged that such a contract was so absurd or so unreasonable as to be nonenforceable. The consideration thereof was the mutual agreement to pay commissions, based on percentages, one to the other, as one or the other carried cattle. The contemplated and natural effect of the difference in the percentages was to throw the carriage to Mr. Munson's steamship line, and, as a corollary, Mr. Ceballos ceased from such carriage.

The question as to whether the defendant took over the contract—whether there was a "novation," as the parties term it—was for the jury. Professor Ames (6 Harvard Law Review, 184, 186) says:

¶ 4. See Novation, vol. 37, Cent. Dig. § 3.

"The difficulty in novation cases is, therefore, no longer one of law, but of fact."

The bill of sale by Mr. Munson to the defendant corporation, the retention of the chief ownership of that business by Mr. Munson, the accountings rendered thereafter to the plaintiffs upon the basis of the agreement, the payments thereon, the acceptance of the same by the plaintiffs, and the bringing of this suit (Osborn v. Osborn, 36 Mich. 48) justified the submission. De Witt v. Monjo, 46 App. Div. 533, 61 N. Y. Supp. 1046; Osborn v. Osborn, supra; Robbins v. Robinson, 176 Pa. 341, 35 Atl. 337; Mitrovich v. Fresno Fruit, etc., Co. 123 Cal. 379, 55 Pac. 1064; Regester v. Dodge, 61 How. Prac. 107, citing many authorities; Thompson v. Percival, 3 Nev. & M. 167; Mulgrew v. Cocharen, 96 Mich. 422, 56 N. W. 70; Walker v. Wood, 170 Ill. 463, 48 N. E. 919; Lynch v. Austin, 51 Wis. 287, 8 N. W. 129; Shaw v. McGregory, 105 Mass. 96.

If the contract of substitution of the defendant be established, then there is consideration. Longworth, J., in Bacon v. Daniels, 37 Ohio St. 279, says:

"The existence of the contract being established, the consideration is self-evident."

See, too, Ryan v. Pistone, 89 Hun, 78, 35 N. Y. Supp. 81; Kromer v. Heim, 75 N. Y. 574, 31 Am. Rep. 491.

I think that the contract was not necessarily in violation of the United States statute of 1890. Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]. As testified to by Mr. Rohl, Mr. Munson agreed to pay percentages on freights earned by Mr. Munson, and Mr. Ceballos agreed to pay Munson one-half of such percentages on all freights earned by Ceballos as long as either should carry any cattle to Cuba. There was no provision as to maintaining rates or as to preventing competition. Prices were not fixed, dealings were not confined to a combination of persons, nothing tended towards a monopoly, and therefore I think the parties are without the ban of the law. Leslie v. Lorillard, 110 N. Y. 519, 534, 18 N. E. 363, 1 L. R. A. 456; Brooklyn El. R. R. Co. v. B., B. & W. E. R. R. Co., 23 App. Div. 29, 48 N. Y. Supp. 665.

But I think that the verdict is against the weight of evidence. Mr. Rohl alone testified that the agreement was to continue so long as either party carried freight. But Mr. Rohl is an interested witness, and the testimony of Mr. Munson, also an interested witness, is that there was no conversation relative to the duration of the agreement. The record, however, does not present merely the testimony of Mr. Rohl against that of Mr. Munson, but there is a correspondence in evidence. The vice president of the defendant writes to the plaintiffs that they are forced to discontinue the payment of the commissions after a certain date. Mr. Ceballos answers that he noticed by that letter that the long-standing agreement is to be terminated by a certain date named in the Munson letter, expresses the possibility of their altering their minds, asks whether they consider their letter of termination as final, and trusts that they may find some means of continuance. Later Mr. Ceballos writes to ask whether there cannot be an appoint-

ment made with reference to the cattle business, and to this the defendant answers that they cannot change their decision. The attitude of the plaintiffs is entirely antagonistic to the idea that the defendant was bound by a definite contract; i. e., one which they could not terminate at will upon fair notice. Under all of the circumstances, I advise the submission of the case to another jury.

The judgment of nonsuit should be reversed, and a new trial be granted. All concur.