BURLINGTON CITY LOAN AND TRUST COMPANY et al., appellants,

*v.*

PRINCETON LIGHTING COMPANY et al., respondents.

[Argued March 22d, 1907. Decided November 18th, 1907.]

1. Where corporations are merged into a new corporation, and mortgage bondholders of one of the constituent companies exchange their bonds for mortgage bonds of the consolidated company by depositing them with a trustee, who retains them uncanceled, the question whether they are in equity to be held to be satisfied depends upon the intent of the parties and the facts of the case.

2. Where an agreement for the merger of corporations provides for the issue of mortgage bonds to be exchanged for similar bonds of the constituent companies, the holders of the latter bonds who do not assent to the merger agreement cannot complain if the parties thereto vary the terms upon which the bonds are exchanged.

3. Where an agreement for the merger of corporations provides for the exchange of the whole of an outstanding issue of bonds for new bonds of the consolidated company by depositing them with a trustee, and the deposited bonds are held by the trustee uncanceled, and the agreement is not consummated owing to the failure of some of the old bondholders to assent, the question whether the bonds actually deposited are to be held as additional security for the benefit of those depositing them and taking new bonds in exchange, or for the benefit of all holders of the new bonds, depends upon the intention of the parties and the facts of the case.

On appeal from a decree advised by Vice-Chancellor Bergen.

*Mr. George Whitefield Betts, Jr.,* for complainants-appellants.

*Mr. Edward P. Johnson,* for respondents.

The opinion of the court was delivered by

SWAYZE, J.

This is a bill to foreclose a mortgage given to the complainant trust company to secure certain bonds of the Hopewell Electric Light, Heat and Power Company for $50,000. By two orders in the cause certain persons who claimed to hold $40,500 of the bonds were joined as co-complainants and other persons holding $9,500 of the bonds were allowed to intervene as defendants. The controversy in the case is between these two classes of bondholders. The issue to be decided is whether $38,500 part of the bonds of the individual complainants are still outstanding obligations.

The bonds and mortgage in suit were given by the Hopewell company in 1901. Two years later the Hopewell company was merged with other corporations to form the Princeton Lighting Company. The agreement of merger provided for an issue of bonds of the new company secured by mortgage for the purpose of taking up securities of the old companies. These new bonds I shall, for convenience, call the Princeton bonds. The portion of the agreement of merger that is of importance for the present purpose reads as follows:

"Of the foregoing number of bonds, fifty thousand dollars ($50,000) at par shall be retained by the trustee, however, for the purpose of redeeming bond for bond as they are presented, an issue of fifty thousand dollars ($50,000) of bonds of the Hopewell Electric Light, Heat and Power Company, dated August first, nineteen hundred and one, and secured by a mortgage to the Burlington City Loan and Trust Company, a corporation of the State of New Jersey, which last-mentioned bonds shall be delivered up to the trustee and canceled, so that they shall be no longer a lien upon the property of the Hopewell Light, Heat and Power Company, or upon any of the property of the consolidated company."

The material provision of the mortgage securing the Princeton bonds reads as follows:

"(*b*) Seventy thousand five hundred dollars ($70,500) of said bonds are to be retained by the trustee, and are to be certified and delivered from time to time as required to take up and replace fifty thousand dollars ($50,000) at par of outstanding bonds of the Hopewell Electric Light, Heat and Power Company, dated August first, nineteen hundred and one, which bonds are redeemable by the conditions of the mortgage securing them."

The Hopewell bonds were twenty-year bonds, dated August 1st, 1901, and were subject to redemption after August 1st, 1906, a time which had not arrived when the exchange was made of Hopewell bonds for Princeton bonds soon to be mentioned. The Hopewell mortgage contained in the clause giving the mortgagor the option to redeem after August 1st, 1906, this language: "Providing if less than the whole issue is redeemed, the bonds to be paid shall be determined by chance by the trustee under this mortgage."

There is no suggestion that there was ever any such determination by chance. The $38,500 of Hopewell bonds now in controversy were exchanged in 1903 by the holders for a like amount of Princeton bonds through the medium of the North American Trust Company, the trustee named in the Princeton mortgage; they were held by that company, and never surrendered for cancellation to the Burlington Trust Company, the trustee named in the Hopewell mortgage and one of the present complainants. After the insolvency of the Princeton Lighting Company the bonds were sold and bought by the individual complainants.

Under these circumstances the learned vice-chancellor held that the $38,500 of bonds were satisfied, and advised a decree that the property be sold to pay the remaining $11,500 of Hopewell bonds, with interest.

The $38,500 bonds are in fact outstanding as legal obligations uncanceled, and the decree rests upon the supposed equity of the holders of the remaining bonds to have the property sold to pay them alone. The bondholders who profit by the decree were not parties to the merger agreement, and can only obtain the advantage which the decree gives in case the other bonds are to be regarded in equity as actually satisfied. Whether they have been so satisfied or not must rest upon inference, for the holders never in terms were parties to the merger agreement. Their assent to it is to be inferred only from their conduct in acting under it, and in drawing such an inference all their acts ought to be considered; all the circumstances were relevant to show to what extent and upon what conditions they must be inferred to have yielded their assent. It is not for the respondents, who chose to refuse their assent, to complain if the actual parties to the merger agreement chose to modify the terms upon which the depositing bondholders might exchange their bonds. In this view the correspondence between the trust company and the Princeton Lighting Company was admissible to show the terms upon which the bonds were actually deposited. We do not, however, find it necessary to rely upon that correspondence, since we reach the same result by a consideration of the language of the mortgages and the merger agreement only.

Where a contract is to be inferred from the conduct of the parties, the question is obviously one of intention. Upon this point the cases cited in the instructive brief of the respondent and other cases are at one. *Mowry* v. *Farmers' Loan and Trust Co.*, 76 Fed. Rep. 38, 43; *New York Security and Trust Co.* v. *Louisville, &c., Railroad Co.*, 102 Fed. Rep. 382; *Barry* v. *M., K. & T. Railway Co.*, 34 Fed. Rep. 829, 833; *Ames* v. *Railway Company*, 2 Wood 207; *Fidelity Company* v. *Shenandoah Valley Railroad Co.*, 86 Va. 1; *Ketchum* v. *Duncan*, 96 U. S. 659; *Union Trust Co.* v. *Illinois Midland Railway Co.*, 117 U. S. 434.

The merger agreement provides that the new bonds are to be used for the purpose of redeeming bond for bond as they are presented an issue of $50,000. The transaction is to be an entire transaction, and it is the whole issue of $50,000 that is to be redeemed, not some fraction of that issue. The words "bond for bond as they are presented" are intended only to authorize the trust company to acquire these bonds one at a time if necessary, but the redemption is not complete until the whole issue is redeemed; until that time the contract remains executory. This construction is borne out by the subsequent provision that the "last-mentioned bonds" (words which can only refer to the issue of $50,000) are to be delivered up to the trustee (evidently the Burlington Trust Company since the North American Trust Company was to make the delivery) and canceled. The use of the word "canceled" in connection with the delivery to the Burlington company and to characterize a subsequent act, is a plain intimation that prior to that delivery there was no cancellation. The propriety of having the bonds canceled by the Burlington company, the mortgagee, which would be called on to discharge the mortgage, is manifest. To remove all doubt, the agreement proceeds "so that they" (still evidently meaning the issue of $50,000) "shall be no longer a lien upon the property" of the Hopewell company. The provision that this issue of bonds should no longer be a lien was incapable of performance until the whole issue had been exchanged.

This result is sustained by an examination of the Princeton mortgage. By that mortgage $70,500 of the new bonds are to be delivered from time to time as required to take up and replace (not to "pay" or "satisfy".) $50,000 of the Hopewell bonds and certain bonds of the other constituent companies. There is no language here which would authorize the trustee to take up and replace anything less than the whole $50,000. Until the whole were secured, the bonds which the North American company had redeemed bond for bond as presented under the merger agreement, were held, in escrow as it were, to await the consummation of the entire and indivisible contract.

If we felt any doubt as to the correctness of our conclusion

based upon the language of the merger agreement and the Princeton mortgage, that doubt would vanish upon an examination of the Hopewell mortgage. The provisions of that mortgage as to the redemption of the bonds secured thereby are referred to in the Princeton mortgage. Among them is a clause providing for the case where less than the whole issue is redeemed; that clause requires that the bonds to be paid shall be determined by chance. There was in this case no determination by chance, no doubt because the parties concerned did not regard the transaction as the equivalent of payment.

Upon general considerations of equity we should reach the same result. Three views suggest themselves to us as possible—*first,* the deposited bonds may be held for the benefit of all the new Princeton bondholders pending the exchange of the whole issue; *second,* they may be held as collateral security to the new bonds taken in exchange and for the benefit of the depositing bondholders only; or *third,* they may be treated as satisfied for the benefit of those who have refused their assent to the scheme. The last seems to us inequitable for the reason that it allows non-assenting bondholders to profit by a transaction which they have in effect opposed; all that they are equitably entitled to is such a proportion of the mortgage security as their bonds bear to the whole issue. *Barry* v. *M., K. & T. Railway Co., 34 Fed. Rep. 829.*

This allows them all they would have but for the merger agreement, and merely denies them an increased security due to the efforts of others. Equity does not allow them to gather the fruit after others have shaken the tree. While it may fairly be argued, as some of the cases suggest, that the depositing bondholders, by the exchange of bonds, evince an intention to give up the lien of their old bonds, it by no means follows that they intend to give up that lien for the benefit of those who refuse to co-operate with them. It is far more reasonable to assume that if they give it up at all it is for the benefit of all the new bondholders, who in return allow them to share in the security of the new bonds. In the present case none of the parties to the merger agreement—the trust company, the Princeton Lighting Com-

pany (which by virtue of the merger stands in the shoes of the Hopewell company also), the Princeton bondholders, or the depositing Hopewell bondholders—assert that the $38,500 bonds were satisfied. The trust company, by retaining the bonds uncanceled and not surrendering them to the Burlington company, evinced its intent to preserve their lien, and the only persons having a right to determine that question—parties to the merger or Princeton bondholders—raise no objection.

If it were necessary to hold that the contract was varied, they had the right to vary it.

A somewhat similar case is *Steven* v. *Mid-Hants Railway, L. R. 8 Ch. App. 1064; 42 L. J. Ch. 694.*

Whether the deposited bonds are held for the benefit of the depositors alone or for the benefit of all the Princeton bondholders we are not now in a position to determine. The former holders of the $38,500 of Hopewell bonds are not parties, nor do we know what bondholders are represented by the individual complainants. Until the proper parties are brought in, the ultimate disposition of the fund to be realized out of the mortgage premises cannot be decided. The decree must be reversed and the record remitted to the court of chancery in order that a decree may there be entered for the amount due on the whole $50,000 of bonds. It should direct that the proceeds of the foreclosure sale be brought into that court to abide its further order.

The appellants are entitled to costs in this court.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL—12.