UNITED STATES v. KENNEDY.

(Circuit Court of Appeals, Fifth Circuit.   June 2, 1913.)

No. 2,330.

PUBLIC LANDS (§ 11*)—GOVERNMENT OWNERSHIP—ACTION FOR CONVERSION OF TURPENTINE—DEFENSES.

Whoever buys public land, or an interest therein, from an entryman holding no patent, but only a final receipt, buys charged with knowledge of the law that the government has authority, for proper cause, to cancel such receipt at any time before issuance of a patent; and where it is subsequently canceled he cannot defend against an action by the United States for conversion of timber or turpentine from the land on the ground that he was a bona fide purchaser.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 9, 11–13; Dec. Dig. § 11.*

Cancellation of entries, certificates, receipts, warrants, or transfers prior to issuance of patents to public lands, see note to Northern Pac. Ry. v. United States, 101 C. C. A. 120.]

In Error to the District Court of the United States for the Southern District of Mississippi; Henry C. Niles, Judge.

Action at law by the United States against G. M. Kennedy. Judgment for defendant, and plaintiff brings error. Reversed.

Wm. H. Armbrecht, Sp. Asst. Atty. Gen., and R. C. Lee, U. S. Atty. of Jackson, Miss.

J. I. Ford, of Pascagoula, Miss., and Richard Wm. Stoutz, of Muskogee, Okl. (W. A. White, of Gulfport, Miss., on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

SHELBY, Circuit Judge. This is an action brought by the plaintiff in error against the defendant in error for conversion. In some of the counts the property alleged to be converted is described as crude turpentine, and in others as spirits of turpentine. In each count the thing converted is alleged to have been obtained from pine trees on land belonging to the government. The action is based, therefore, on an alleged trespass and injury to property of the plaintiff.

The defendant filed the following plea:

"And for a further and special plea in this behalf to the several counts set forth in this declaration, and numbered from 1 to 12, inclusive, the said defendant says that, prior to the happening of the matters and things therein complained of, said land described in the first count of said amended declaration (being the same land whereon it is complained by the plaintiff that the trees grew from which said turpentine and rosin described in all of said counts was taken) was the homestead of one Annie May Hartfield, and the plaintiff, the United States, through its Land Department, did issue to said Annie May Hartfield on October 30, 1902, a receiver's final receipt, showing that said Annie May Hartfield had complied with the United States homestead laws and was entitled to a patent for said land, and which under the laws and practice of the United States Land Department could at any time thereafter be exchanged for a patent, and that while said final receipt was outstanding, and upon faith thereof, this defendant acquired from said Annie

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

May Hartfield, or her grantees, a right to operate upon said timber and trees growing upon said land for turpentine purposes, and that the said turpentine and rosin so taken by this defendant from said land described in said amended declaration, for the alleged conversion of which this suit is brought, was taken by this defendant, under the authority of said lease and final certificate, before this defendant had any knowledge, or notice that said certificate had been canceled, and in fact before said certificate was canceled, all of which the defendant is ready to verify."

The plaintiff demurred to the plea, alleging several grounds, three of which are as follows:

(a) "Because the plea does not allege that the turpentine and rosin alleged to have been taken by Kennedy was taken before the final certificate was canceled, but only alleges that it was taken by Kennedy prior to the time when Kennedy had knowledge or notice that the final certificate had been canceled."

(b) "Because the fact, if it be a fact, that Kennedy had no notice or knowledge of the cancellation of the final certificate before the conversion of the turpentine and rosin for which this suit was brought is no bar to the plaintiff's right to recover."

(c) "Because it appears from the said plea that the final certificate was, prior to the institution of this suit, canceled, and the fact, if it be a fact, that the turpentine and rosin for the alleged conversion of which this suit was brought was taken by the said Kennedy under the authority of the alleged lease and the said final certificate before the same was canceled, and while the said final certificate was outstanding, constitutes no bar to the plaintiff's right to recover, because by the cancellation of this final certificate any right or authority which the said Anna May Hartfield may have had, by reason of the existence of the said final certificate, was, by the cancellation of the same, canceled, annulled, and abrogated, and that such cancellation related back to the date of the original entry, and annulled and destroyed and abrogated any right, if any, which the said Anna May Hartfield may have had from the date of the original homestead application."

The court overruled the demurrer. The plaintiff declined to plead further. Final judgment was entered against the plaintiff. The plaintiff assigns that the District Court erred in overruling the demurrer to the plea.

The question to be decided is whether or not the plea states a legal defense to the action.

The plea does not deny the conversion of the turpentine. It sets up a right and title to it, and states the facts on which the right is based. In brief, it is that the turpentine was taken from trees on the homestead of Anna May Hartfield, and that the plaintiff, by its Land Department, on October 30, 1902, had issued to her a final certificate, and that, after the final certificate was issued, and while it was outstanding, the defendant obtained a turpentine lease, which authorized him to go on the lands and box the trees thereon and take the turpentine, and that this was done before the defendant had notice "that said final certificate had been canceled." The defendant's right, asserted by the plea, is a purchase from a homesteader holding a final certificate, which certificate the plea shows has been canceled. The plea showing the cancellation of the final certificate shows that the plaintiff has not only the legal title to the land from which the turpentine was taken, but that the outstanding equity created by the final certificate no longer exists. The plea is intended to set up in an action at law the defense of innocent or bona fide purchaser without notice.

The main question raised by the record is whether or not the purchaser of turpentine rights from an entryman holding a final certificate, who enters on the homestead and boxes the pine trees and takes from them the turpentine, can defend, when sued by the government for conversion, on the ground that he is an innocent purchaser without notice; the final certificate, without the knowledge of the purchaser, having been canceled.

The decision of the question requires the consideration of the nature and effect of the final certificate and the effect of the cancellation by the Land Department of the certificate.

The final certificate vests the entryman with an equitable title to the land, and shows, prima facie, that he is entitled to a patent conveying to him the legal title. The legal title remains in the government till the issuance of the patent. Although the holder of the final certificate has the equitable title, it is subject to the jurisdiction and control of the Land Department of the government, and, for proper cause, it may cancel the certificate. Up to the time the patent is issued, the proceedings in the Land Office, like interlocutory judgments of courts, may, for cause, be vacated and annulled. After the patent is issued and delivered, resort must be had to the courts by the government or by an adverse claimant who would annul the patent.

The plea shows the purchase from the holder of the final certificate, but it also shows that the certificate and entry have been canceled. The legal title to the land had never been divested out of the government. The cancellation of the final certificate destroyed the outstanding equity. Whoever buys from the entryman, holding no patent, but only a final certificate, buys charged with knowledge of the law that the government has authority, for proper cause, to cancel the final certificate. The entryman can convey no greater right than he has. It cannot be that, although the government retained the right, for cause, to cancel the certificate as against the entryman, this power and right could be defeated by a mere transfer of his claim by the entryman to a third party. The certificate having been canceled, the equitable title of the entryman or his transferee no longer exists. A transferee of an entryman, who purchases before the issuance of the patent, the entry being subsequently canceled, does not occupy the position of a bona fide purchaser. It is so decided in Hawley v. Diller, 178 U. S. 476, the reasons being stated and many authorities cited on pages 484 to 488, inclusive, 20 Sup. Ct. 986, 44 L. Ed. 1157. We find no decision of the Supreme Court in conflict with this view.

It is true that it has been held in a later case that the second headnote in Hawley v. Diller, supra, goes further than, and does not conform to, the opinion of the court, which it is intended to condense for the convenience of the profession. In general terms, that headnote states that a purchaser from an entryman "cannot be regarded as a bona fide purchaser * * * unless he become such after the government, by issuing a patent, has parted with the legal title." This headnote, to conform to the opinion, should have been confined to cases in which the equitable title of the entryman was subsequently canceled by the Land Department. If an entryman holding a final certificate transfer the same, his transferee may become a bona fide

206 F.—4

purchaser, if such certificate be not canceled by the Land Department, but a patent be issued thereon. United States v. Detroit Lumber Company, 200 U. S. 321, 337, 26 Sup. Ct. 282, 50 L. Ed. 499. When it is considered that in Hawley v. Diller, supra, the court was dealing with a case where the entry had been canceled, and in United States v. Detroit Lumber Company, supra, it was considering a case in which no cancellation occurred, but in which the patents were issued, there is no conflict in the two opinions. The latter case criticises the work of the reporter in the first case in not limiting the second headnote to cases in which the entry had been canceled; but it does not, as we understand it, overrule or limit what was decided by the court in the first case.

It is a general doctrine of equity that one who purchases from a vendor who has only an equitable title, and who is chargeable with notice that another holds the legal title, takes only such rights as his vendor had, and cannot defend against the holder of the legal title as a bona fide purchaser. It is not in conflict with, but confirmatory of, this rule to hold, as was held in the Detroit Lumber Company Case, supra, and in United States v. Clark, 200 U. S. 601, 607, 26 Sup. Ct. 340, 50 L. Ed. 613, that one who purchases from an entryman holding a certificate that carries only an equitable title, but who, subsequent to such purchase, obtains a patent conveying the legal title, may defend as a bona fide purchaser, because, by the doctrine of relation, the title is treated as taking effect at the date of the entry.

If the final certificate had not been canceled, and the patent had been issued to the entryman or his transferee, in the instant case, then a different rule would prevail, and a sale of the land, or an interest in the timber on it, although made before the issuance of the patent, would be effective, because the patent operates to transfer the title, not only from its date, but from the inception of the equitable right upon which it is based. A purchaser, therefore, from one holding a final certificate which is never canceled, but on which ultimately a patent is duly issued, may defend a suit to cancel the patent, on the ground that he is a bona fide purchaser. United States v. Detroit Lumber Company, supra.

We are of the opinion that the case at bar is controlled by Hawley v. Diller, supra.

The Land Department, as a special tribunal, has confided to it the administration and execution of the laws for the disposition of the public lands. It has the power to review its prior rulings, and to cancel existing entries and all proceedings prior to the issuance of the patent. This power is not arbitrary nor unlimited, and can be exercised only after notice to parties in interest, who must have opportunity to defend, but, when exercised, as shown by the plea in this case alleging the cancellation of the final certificate, its action, being brought to the notice of the court collaterally, and not by direct attack, must be deemed valid. If, after the cancellation of the final certificate to Hartfield, the government had issued a patent to another, such patentee could have maintained an action against any one who cut and took timber from the land, or who took gum from the trees on it, pending such patentee's application for a patent, although the tres-

passer acted by authority of one who held the final certificate, which was subsequently canceled. Peyton v. Desmond, 129 Fed. 1, 63 C. C. A. 651, and cases there cited. If the government, by its patent, after the cancellation of the final certificate, can confer such right of action on another, it follows that it can itself maintain such action in cases where, after cancellation of the final certificate, it grants no patent, but retains the title.

There are other defects in the plea, making it amenable to the demurrers; but it is not necessary to consider them.

The circumstances under which the purchase was made may affect the question of the measure of damages, but that matter is not now before the court.

The judgment is reversed, and the cause remanded, with instructions to sustain the demurrer to the plea.