UNITED STATES v. GROVER et al.

(District Court, N. D. California, Second Division. October 27, 1915.)

No. 15,214.

1. MORTGAGES ⊕307—LIEN—TAKING OF NEW MORTGAGE IN RENEWAL.
  Where a mortgage is renewed before maturity, or the evidence of the debt is changed by the substitution of new notes therefor, or for such portion thereof as may remain unpaid, the lien of the mortgage is not lost or affected, even though it is discharged of record and a new mortgage is taken on the same property, unless the circumstances of the transaction disclose clearly that such was the intention of the parties. Nor does including in the new mortgage an additional indebtedness not covered by the first discharge the lien of the old mortgage, so far as the indebtedness secured thereby remains unpaid, unless such be the purpose of the parties.
  [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 864, 897; Dec. Dig. ⊕307.]

2. NOVATION ⊕7, 13—NATURE AND REQUISITES—INTENTION OF PARTIES.
  The question whether a debt has been novated by a particular transaction is ordinarily one of fact, dependent entirely upon the intention of the parties, and it can only be predicated on the terms of a written instrument, where they are so plain and explicit as to leave no doubt of their construction, when it may be treated as a question of law.
  [Ed. Note.—For other cases, see Novation, Cent. Dig. §§ 7, 13; Dec. Dig. ⊕7, 13.]

3. PUBLIC LANDS ⊕120—SUIT FOR CANCELLATION OF PATENT—RIGHTS OF BONA FIDE MORTGAGEE.
  A mortgage of land for which the mortgagor holds a final receipt from the United States, though executed before the issuance of patent, if taken in good faith and for value, protects the holder as a bona fide purchaser,

and is superior in equity to the right of the government to a cancellation of the patent for fraud of the patentee.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ☞120.]

In Equity. Suit by the United States against Harry M. Grover and William Barklage. On exceptions to master's report. Exceptions sustained.

John W. Preston, U. S. Atty., of San Francisco, Cal.
Henry M. Owens, of San Francisco, Cal., for defendants.

VAN FLEET, District Judge. This is a bill by the government to cancel the patent to a parcel of public land. The defendant William Barklage held a mortgage on the premises, executed by Grover, the patentee, after receipt of final certificate, but before patent, and he filed an answer in which he set up his rights under his mortgage, claiming as an innocent purchaser. He died pending the suit and before trial; but the government by bill of revivor brought in those succeeding to his rights, and made them defendants. After the appointment of Barklage's executors, the latter, who were his devisees as well, made an arrangement with Grover whereby they formally canceled the Barklage mortgage, which was soon to expire, and took a new one in their own names on the same property. The Barklage mortgage was for $2,000, with interest at 8 per cent. The one to the devisees was for a balance of $1,375 still unpaid on the former mortgage, the sum of $276 due on another note of Grover, previously unsecured, and an item for merchandise, making the principal of the second mortgage $1,650, with interest fixed at 7 per cent. This transaction was had before the trial. Thereafter the cause was, by consent of the parties, sent to the master to take the evidence and report his findings and conclusions thereon.

The master found: (1) Fraud on the part of Grover, justifying cancellation of the patent; (2) that the mortgage to Barklage was for value, and taken in good faith, without knowledge of Grover's fraud, and that Barklage, at the time of his death, was entitled to be protected in the suit as an innocent purchaser for value; but (3) that the subsequent transaction between the devisees of Barklage and Grover, resulting in the second mortgage, extinguished the security of the first mortgage in its entirety—that is, that the mortgage to the devisees was not a renewal of the prior mortgage, but a new obligation, by which the rights of the government could in no respect be prejudiced; and he concluded that the plaintiff was entitled to a decree canceling the patent as against all the defendants. This holding of the master as to the character and effect of the mortgage to the devisees is made the subject of an exception by those defendants and gives rise to the only question in the case calling for special notice.

[1] The contention of the devisees is that the evidence does not warrant the construction put by the master upon the effect of the new mortgage; but that, to the extent the latter mortgage covers the unpaid portion of the debt secured by the prior mortgage, they are enti-

tled to have it treated as a renewal and continuation of that security, with the same protection as a prior equity, as if the first had never been canceled. The record does not disclose any controversy in the evidence as to the purpose and intent of the parties to this new mortgage; that is, so far as their intent could govern, it was evidently not their desire or purpose to abandon or waive their security, or forego their equity in the land, but to avail themselves of it, and that they supposed in the course they took they were accomplishing that purpose. The conclusion of the master is, therefore, not to be regarded as if based on facts found from conflicting evidence, but as a mere deduction by him of what he deemed the legal effect of facts as to which there was no dispute. The question is so treated by him in discussing the effect of the transaction. In his report, which is in the form of an opinion, he thus states the reasons that actuated him:

"If this is a new mortgage, it is, of course, clear that the defendants are not purchasers for value without notice. This suit was then pending and operated as notice. It is contended by the defendants, however, that it was a renewal of the former mortgage to William Barklage, and that, so far as it represented an amount due on that mortgage, they are entitled to stand in his shoes. In the first place, I am clear that it is not a renewal of the old mortgage, but a new mortgage. The parties are different, the amount is different, made up as it is of the portion still remaining due on the old mortgage plus an amount represented by a note for $276 previously secured. The rate of interest is different, being 8 per cent. in the old mortgage, and 7 per cent. in the new, and the security differs slightly, in that the second mortgage includes a sawmill and machinery not included in the first mortgage. The language of the decree of distribution speaks of a settlement; in other words, it is a novation. The prior obligation was discharged and a new one created to take its place, and taken with full notice of the claims of the United States."

Are these considerations such as to support the conclusion of the master? It seems to me that they are lacking in most essential respects. That equity ignores mere form and looks to substance, and will ever seek to ascertain and carry out the intent of the parties, if compatible with its principles, is axiomatic. Applying these principles to the present case, it is well settled that, where a mortgage is renewed before maturity, or the evidence of the debt is changed by the substitution of new notes therefor, or such portion thereof as may remain unpaid, the lien of the mortgage is not lost or affected, unless the circumstances of the transaction disclose clearly that it was the intention of the parties to create a new security and treat the old as canceled. Dingman v. Randall, 13 Cal. 512; Bond v. Liverpool Insurance Co., 106 Ill. 654; Security Co. v. Hirsch, 96 Ala. 232, 11 South. 63. And the fact of entering satisfaction of the existing mortgage when taking a new one, if the latter be designed by the parties as a mere continuation of the first, when the two acts are a part of the same transaction, does not operate as an extinguishment of the mortgage, but will be regarded as a renewal thereof, and not as abandoning the lien and letting in intervening equities. Dillon v. Byrne, 5 Cal. 455; Roberts v. Doan, 180 Ill. 187, 54 N. E. 207; Higman v. Humes, 127 Ala. 404, 30 South. 733; Eggeman v. Eggeman, 37 Mich. 436.

So long as the same debt, or some part of it, subsists, the presumption ordinarily is that the new mortgage is intended as a renewal of the old,

and a continuance of the same security. Sloan v. Rice, 41 Iowa, 465; Markell v. Eichelberger, 12 Md. 78; McDonald v. McDonald, 16 Vt. 630. Nor does the including in the new mortgage of an additional indebtedness not covered by the first discharge the lien of the old mortgage, so far as the indebtedness secured thereby remains unpaid, unless such be the purpose of the parties. London & S. F. Bank v. Bandmann, 120 Cal. 220, 52 Pac. 583, 65 Am. St. Rep. 179; De Cottes v. Jeffers, 7 Fla. 284. And very clearly the difference in the rate of interest between the two mortgages where, as here, the rate is less in the last mortgage than in the first, cannot be regarded as material to indicate an intention to create a new obligation and abandon the security of the old. Kern v. Hotaling, 27 Or. 205, 40 Pac. 168, 50 Am. St. Rep. 714. So far as the difference in the parties to the two instruments is concerned, to which the master refers, manifestly that cannot be regarded as a material circumstance supporting his conclusion, where, as here, the mortgagees in the second mortgage are the successors in interest and privies in estate with the one who held the first.

As to the supposed difference in the security or property covered by the second mortgage, suggested by the master, it is a misapprehension. The land described in both instruments is the same, and the record indicates quite clearly that the lumber mill described in the second mortgage was not on the land when the first mortgage was given, being built subsequently; but the land being the same, when erected the structure would become a part of the realty, and in the absence of special exemption would go to feed the security afforded by the land, although not described. Improvements which are part of the realty need not be referred to in deeds or mortgages, unless they are to be exempted; they go with the land. So the security afforded by the second mortgage is not different from that of the first.

[2] The master adverts to the language of the decree of distribution of the Barklage estate, referring to the transaction resulting in the taking of the new mortgage as a "settlement," and makes this the basis of the suggestion that it was a novation, "The prior obligation was discharged and a new one created to take its place," as he puts it. In the first place, the recital in question was wholly unessential to any right carried by the decree, and was binding upon no one; but, in the next place, if it were the recital of a jurisdictional fact, it would be insufficient as the basis of a finding of novation. The question whether a debt has been novated by a particular transaction is ordinarily one of fact, dependent entirely upon the intention of the parties (Ceballos v. Munson S. S. Line, 93 App. Div. 593, 87 N. Y. Supp. 811; Trudeau v. Poutre, 165 Mass. 81, 42 N. E. 508); and it can only be predicated of the terms of a written instrument, where they are so plain and explicit as to leave no doubt of their construction, when it may be treated as a question of law (Trudeau v. Poutre, supra; Sinclair v. Richardson, 12 Vt. 33).

For these reasons I am of opinion that the finding and conclusion of the master as to the effect of the new mortgage to the devisees of Barklage cannot be sustained, but that the latter are entitled to protection against the forfeiture of their equity to the extent that their mortgage

secures the unliquidated portion of the debt due their testator—$1,375, with interest.

[3] It is urged in the brief of the government that, whether the ruling of the master, just considered, be sustained or not, the government is, nevertheless, entitled to a decree. This contention is based upon the proposition in substance that the mortgage to Barklage, having been executed prior to patent, carried no greater title or equity than that held by the mortgagor at the time, and therefore, however innocently taken, created rights subordinate to the equity of the United States, which held the legal title at the time of its execution—a doctrine which would seem to find support in some of the cases. But it is sufficient to say without elaboration that I regard the view upheld by the master as not only in accord with correct principles of equity, but as supported by the weight of authority. 2 Pomeroy's Eq. Jurisp. § 738; Marshall v. Farmers' Bank, 115 Cal. 330, 42 Pac. 418, 47 Pac. 52; United States v. Clark, 200 U. S. 601, 26 Sup. Ct. 340, 50 L. Ed. 613; United States v. Detroit Lumber Co., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499; United States v. Kennedy, 206 Fed. 47, 124 C. C. A. 181.

In accordance with the views above expressed, the exception to the master's report above discussed is sustained.