### JOHN WANAMAKER NEW YORK, Inc., v. COMFORT et al.*

#### No. 6211.

Circuit Court of Appeals, Fifth Circuit.

Dec. 3, 1931.

Wm. K. Miller, of Augusta, Ga., for appellant.

Lansing B. Lee, Geo. T. Jackson, and James E. Harper, all of Augusta, Ga., Samuel B. Adams and A. Pratt Adams, both of Savannah, Ga., and James M. Hull, Jr., and E. H. Callaway, both of Augusta, Ga., for appellees.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

In this case the material facts, which are undisputed, are these:

The Forrest Hills Corporation, a Georgia corporation, built a hotel at Augusta, Ga., and on July 15, 1926, executed a mortgage and deed of trust on some 650 acres of land, on which the hotel was located, to secure an issue of bonds to the amount of $850,000, maturing annually, in various amounts, over a period of ten years. Later, on December 15, 1926, a chattel mortgage and deed of trust covering all the personal property of the company was executed as additional security for the bonds. Both deeds of trust named the Adair Realty & Trust Company as trustee. Bonds to the amount of $798,000 were issued and obtained by bona fide holders.

Appellant, John Wanamaker, a New York corporation, supplied the furniture for the hotel at a cost of $136,946.94. To secure the payment of the purchase money, a security deed and a security bill of sale, to be construed as one instrument, were executed. This security was made in effect a second mortgage on both the realty and the personal property of the company, subordinate to the mortgages securing the bonds. This debt was evidenced by 24 promissory notes of approximately $5,706 each, maturing monthly from February 1, 1927.

*Rehearing denied January 9, 1932.

The Adair Company became insolvent. It resigned as trustee, and the Atlanta Trust Company was appointed in its stead. The Adair Company had pledged some $500,000 of the bonds for its own use, and had failed to account for $78,000 of bonds sold; consequently, the Forrest Hills Corporation was unable to meet its obligations as they matured. In this situation a new corporation, called the Forrest Hills Hotel Corporation, was organized, with the same personnel of officers as the old corporation. On April 11, 1927, a conveyance was made to it of all the property of the old corporation, subject to the existing debts and incumbrances, which the new corporation assumed and agreed to pay. The expressed purchase price was $350,000 and other valuable considerations, but no money was paid. Instead, stock of the new corporation to the amount of $350,-000 was transferred to the old corporation.

Appellant, John Wanamaker, was advised of the above state of facts, and agreed to an extension of its debt. Only four of the notes had been paid, reducing the amount due appellant to approximately $115,000. Thirteen new notes were executed, the first due on April 1, 1928, and the last due on April 1, 1929, and these the new corporation indorsed. John Wanamaker agreed to not bring suit before the maturity of the last note.

Owing to the fact that the Adair Company was named in the bonds as trustee, the holders found it difficult to negotiate them. A condition of the trust deed permitted the exchange of bonds for those of lower or higher amounts. An agreement was entered into between the old and the new corporations, to which the trustee was a party, by which the bondholders were permitted to exchange them for bonds of the new corporation, to be secured by the original mortgages and deeds of trust. Holders of bonds to the amount of $636,000 exchanged them, leaving bonds of the original issue outstanding to the amount of $162,000. The new bonds were antedated to conform to the original issue, and their maturity was not extended. Clauses in the exchange agreement provided that the new bonds should be subrogated to the rights of the old bonds and be secured by the original mortgages and deeds of trust as fully as the original issue. It was further stipulated by the agreement that the exchanged bonds should not be canceled, but should be retained by the trustee and stamped surrendered for exchange and substitution by bonds of the new corporation.

The Atlanta Trust Company went into liquidation and resigned as trustee. On March 3, 1930, appellee, the Citizens' & Southern National Bank, was appointed trustee in its stead in a proceeding in a state court. Thereafter, on June 10, 1930, receivers were appointed for the property by the United States District Court for the Southern District of Georgia on a creditor's bill brought by Walker R. Comfort, Jr., and others, appellees. On October 25, 1930, the present trustee, on the request of 95 per cent. of the bondholders, and by leave of the court, filed a bill for foreclosure of the mortgages. The bill alleged that the trustee had the custody of all the bonds that had been exchanged. John Wanamaker was made a party defendant to this bill, and answered, asserting the priority of its lien over the holders of the exchanged bonds, but admitting its rights were subordinate to those of the holders of the original bonds not exchanged. The District Court ruled that all the bonds were valid, prior obligations, and on January 8, 1931, entered a decree of foreclosure ordering the property to be sold for the benefit of all the security holders. From that decree this appeal is prosecuted.

It is contended by appellant that the exchange agreement constituted a new mortgage, and that the exchange of bonds pursuant to it was a novation and cancellation of the original mortgage and a discharge of the old bonds, to the extent that the new bonds were substituted for them.

■ Novation is derived from the civil law. It is comprehensively defined by the Louisiana Civil Code as follows:

"Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place." Article 2185.

"Novation Takes Place in Three Ways: 1. When a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished. 2. When a new debtor is substituted to the old one who is discharged by the creditor. 3. When by the effect of a new engagement, a new creditor is substituted to the old one, with regard to whom the debtor is discharged." Article 2189.

"Novation * * * is not presumed; the intention to make it must clearly result from the terms of the agreement. * * *" Article 2190.

Construing these articles, the Supreme Court of Louisiana held, in Baker v. Frellsen,

32 La. Ann. 822, as follows: "A compromise between creditor and debtor, by which the amount of the debt, the terms and mode of payment, the rate of interest and the nature of the securities are changed, does not effect a novation, unless the intention of the parties to novate the obligation is particularly expressed."

In adopting the rule of novation, courts of equity apply the principles above set out in their entirety. The question is learnedly discussed in the case of McDonnell v. Insurance Co., 85 Ala. 401, 413, 5 So. 120, et seq.

It is a fundamental principle of novation that it does not take place by the substitution of a new debt or a new debtor, unless the old debt is extinguished or the old debtor is discharged. Novation is not to be presumed. It is to be determined by ascertaining the intent of the parties from the evidence in each particular case.

Construing the facts in this case, it is apparent that the exchange agreement was in no sense a mortgage. It created no new lien, and its whole intent and purpose was to preserve the lien of the original mortgage for the new bonds. It was provided in the agreement that the original bonds should not be canceled. They were not canceled, but were held by the trustee for the benefit of the holders of the new bonds, and were in its possession when it filed the bill for foreclosure. The assumption of the debts of the old company by the new one was merely additional security, and did not substitute a new debtor for the old one. The old debtor was not discharged. It is immaterial that the form of the new bonds was slightly different. The appointment of a new trustee was provided for by the original trust deed. If one had been appointed, and new bonds had been issued in exchange for old, under the original agreement, it would have been proper for the bonds to bear the new trustee's name. If the Forrest Hills Company had elected to reorganize and change its name to include the word "hotel," as no doubt it might have done legally, new bonds issued in exchange for old under the original agreement would necessarily have carried the name of the new corporation. Certainly neither of these changes would have rendered the new bonds invalid. What was actually done was in substance the same as if the company had been reorganized under a new name with the appointment of a new trustee. No question of fraud or bad faith is raised, and the inevitable conclusion from all the facts in the case is that the exchanged bonds were valid existing obligations secured by the original mortgage and entitled to preference over the security held by appellant. The following authorities support this conclusion:

In Jones v. Guaranty & Indemnity Co., 101 U. S. 622, 630, 25 L. Ed. 1030, cited with approval in King v. Doane, 139 U. S. 166, 172, 11 S. Ct. 465, 35 L. Ed. 84, the Supreme Court said: "If a note secured by a mortgage be renewed or otherwise changed, the lien of the mortgage continues until the debt is paid. Changes in the form of the instrument are immaterial. Equity regards only the substance of things, and deals with human affairs upon that principle."

A case very much in point, owing to the similarity of the facts, is Burlington City L. & T. Co. v. Princeton Lighting Co., 72 N. J. Eq. 891, 67 A. 1019. In that case it appeared that a new issue of bonds was exchanged for an old issue. The court held that the determining factor was the question of intention, and that on the facts in the case the old bonds were not discharged. In Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868, the question was presented as to whether certain interest coupons had been sold or paid so as to extinguish the debt. The Supreme Court held, on the facts in the case, that it was the intention of the holder of the coupons to transfer his title, and not to extinguish the debt, and therefore that the coupons were valid and protected by the mortgage equally with the bonds from which they were taken. In Rensselaer & S. R. Co. v. Irwin, Collector (C. C. A.) 249 F. 726, it appeared that a company had leased its railroad, equipment, and franchises. The lessee assumed and agreed to pay the interest on certain mortgage bonds. It was held that the guaranty of the lessee did not substitute it as debtor for the lessor, nor extinguish the old debt, but was merely additional security for the bonds. In Griffin v. International Trust Co. (C. C. A.) 161 F. 48, it appeared that a company had executed a second mortgage to the same trustee, to secure an issue of new bonds, which recited that it was subject only to the prior mortgage, and was given to secure the payment of the bonds secured thereunder, which were to be paid by exchanging them for bonds issued under the new mortgage. The first mortgage was not released of record. It was held that the holders of the new bonds were entitled to foreclose under both mortgages, and the lien was superior to that of a second mortgage, prior in date to the new mortgage. Another case very much in point is Mowry

v. Farmers' Loan & Trust Co. (C. C. A.) 76 F. 38. In that case it appeared that the reorganization agreement of a railroad provided for the issuance and exchange of new securities for old, the deposited bonds to be held by the trustee under the mortgage as additional security for the new bonds. It was held that the bonds deposited were not extinguished and the lien securing them was not waived. To the same effect are the cases of Barry v. Mo. K. & T. Co. (C. C.) 34 F. 829; N. Y. Security & Trust Co. v. Louisville, E. & St. L. Consol. R. Co. (C. C.) 102 F. 382; and the U. S. v. Grover (D. C.) 227 F. 181, in all of which it was held that the intention of the parties must govern and that new issues of bonds were valid and protected by the lien of the original mortgage.

The case of Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963, relied upon by appellant, does not announce a contrary rule. In that case it appeared that three railroads owning property, each burdened by a mortgage to secure a bond issue, consolidated by two of them selling their property to the third railroad, which changed its name and issued new bonds bearing upon all of the consolidated property. In a receivership proceeding, the holders' of the original bonds of one of the consolidating railroads sought to foreclose on them to the exclusion of the new bonds. It was shown that the old bonds had been surrendered to the trustee and canceled. The Supreme Court held that what had been done amounted to cancellation, obviously basing its decision upon a determination of the intention of the parties.

It would be useless to further review the authorities. Of course, there are cases holding that by an exchange of securities the original debt and liens securing it have been canceled, but each case depends upon its own facts. No case has been cited that would compel a different conclusion than that arrived at above.

The record presents no reversible error.

Affirmed.