## UNITED STATES *v.* CLARK.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 359.    Argued January 9, 10, 1906.—Decided March 5, 1906.

The rule that this court will not disturb findings of fact where both the Circuit Court and the Circuit Court of Appeals have concurred should not be departed from except in a very clear case, especially when those findings are against a charge of fraud in an effort to overthrow a patent of the United States.

In order to overthrow a patent on charges of fraud on the part of the entryman, and knowledge thereof on the part of a purchaser, the proof must be clear and fraud or knowledge of fraud in the entry will not be inferred from a merely suspicious circumstance; the purchaser is not bound to hunt for grounds of doubt. *United States* v. *Detroit Timber & Lumber Co.,* ante, p. 321 followed.

THE facts are stated in the opinion.

*Mr. Marsden C. Burch* and *Mr. Fred A. Maynard,* Special Assistant United States Attorneys, with whom *The Solicitor General* was on the brief, for the United States:

In this case the fact is established that the sole purpose which induced each one of the entrymen and entrywomen named in

the bill of complaint to take up a timber claim was that they might sell it to Cobban and receive from him $100. The quality of the land and quantity of the timber thereon were immaterial. They were taken to the land, and told to enter it, and when they obtained the receiver's receipt they could sell it and get a hundred dollars.

When land is taken up under such circumstances, title thereto is acquired contrary to the oath prescribed in the timber and stone act. *Hawley* v. *Diller*, 178 U. S. 476. See also *S. C.*, 17 L. D. 468. See *Diller* v. *Hawley*, 48 U. S. App. 462.

In *United States* v. *Detroit Timber & Lumber Company*, 131 Fed. Rep. 668, the court finds that the speculative clause of the act was violated.

All the entrymen also violated the "prior-agreement" clause of the act, and thus the case falls within the rule in *United States* v. *Budd*, 144 U. S. 154.

A man cannot be a *bona fide* purchaser before patent. *Hawley* v. *Diller*, 178 U. S. 476. The courts below have thus far held that under some circumstances he can be.

It is agreed, before patent issues, the guilty entryman, and the innocent purchaser from him, forfeit all moneys paid for lands, and all right to both land and money, if officers of the Interior Department, on ascertaining the entryman's fraud, take proper steps to annul the receiver's receipt.

It is agreed, after patent, if the guilty entryman has not sold, he also forfeits money and land, if, ascertaining the fraud, the Government proceeds, in equity, to annul the patent and fraud is completely established.

Appellant contends that the innocent purchaser from a guilty entryman, before patent, stands in his shoes from beginning to end; he can buy no more than the entryman has to sell; with the guilty entryman he falls before patent or after, at any time within the statute of limitations, Comp. Stat. U. S. 1521, because the entryman has neither a valuable equitable title by the receiver's receipt nor title by the patent.

The courts below, holding against the Government, admit

that entryman and purchaser are as one before patent, but also hold that the moment patent issues they part company, and from that time, while the Government can file its bill to avoid the patent if still owned by the guilty entryman, it can not do so if prior to patent he has sold to an innocent purchaser, and in so doing have misconstrued *Hawley* v. *Diller, supra.*

The judicial department has the same authority, after patent has issued, within the period of limitations, until the land is purchased by a *bona fide* purchaser, and the guilty entryman and his assignee can be reached as well after as before patent. The Government still has power to protect itself from fraud and perjury, but the forum alone is changed. As to the law governing the receiver's receipt, as declared by this court, see *Myers* v. *Croft*, 13 Wall. 291; *Parsons* v. *Verzke*, 164 U. S. 89; *Orchard* v. *Alexander*, 157 U. S. 372; *Guaranty Savings Bank* v. *Bladow*, 176 U. S. 448, 454; *Thayer* v. *Spratt*, 189 U. S. 350; *United States* v. *Steenerson*, 50 Fed. Rep. 507.

The decree of the lower courts failed to recognize this continuing power of the Government, in deciding that simply because, by issue of patent, the officers of the Land Department lost jurisdiction, all power to undo the fraud was gone.

The true rule is, that the courts acquire jurisdiction the moment the Interior Department loses it. *Peyton* v. *Desmond* (C. C. A.), 129 Fed. Rep. 1, citing *Knight* v. *United States Land Association*, 142 U. S. 161.

There is no legal reason why Clark, who would have sustained a total loss in case the frauds had been discovered an hour before patents issued, holds an unassailable title *eo instanti* on the issuing of patents, and thereby has become a *bona fide* purchaser.

This court has repeatedly decided that in case the entryman defrauds the Government he can be proceeded against as well after patent has issued as before. *United States* v. *Iron Silver Mining Co.*, 128 U. S. 673.

Absence of notice of fraud is an indispensable element of the defense of a *bona fide* purchase. It is impossible for a purchaser

of the receipt to make this defense because by law he is charged with notice. As patent has not issued, he knows that he cannot buy the legal title; that the voidable contract may be avoided and therefore *caveat emptor* applies. Knowledge of the law is. conclusively presumed. In all cases of statutory forfeitures ensuing from acts done or omitted, an innocent purchaser without notice cannot claim precedence of the title of the United States. *United States* v. *Grundy*, 3 Cranch, 338; *United States* v. *1,960 Bags of Coffee*, 8 Cranch, 398; *Distilled Spirits*, 11 Wall. 356. See also *Wilson* v. *Wall*, 6 Wall. 83; Pomeroy Eq. Jur. §§ 753, 762.

Appellee, before purchasing these lands, knew all the provisions of the law and the consequences if there was any violation thereof by himself or the entrymen.

He took his chances, and cannot now escape the loss, the risk of which he deliberately assumed. Such a person has no equity the courts can recognize.

*Mr. Walter M. Bickford* and *Mr. George F. Shelton* for appellee:

The defense of *bona fide* purchaser for a valuable consideration without notice was available to the defendant. This defense was absolute and precluded a recovery by the Government for the reason that prior to the commencement of suit patents had issued from the Government for said lands, and the full legal title to the same had vested in the defendant. *United States* v. *Stinson*, 197 U. S. 200, 204. The case of *Hawley* v. *Diller* does not sustain the position of the Government. On the contrary, the principle is therein recognized that when patent has issued, and the legal title has vested in the grantee of the Government, or his successors, the Government must seek redress, the same as any other litigant, in a court of equity.

The fact that the defendant at the time of purchasing the lands in question, obtained only an equitable title, did not debar

him from availing himself of the plea of a *bona fide* purchaser, because the legal title at the time of the commencement of the suit vested in him, and he was the owner of the full legal title as well as of the equitable title at said time; and, as a consequence, the strict requirements of the law for the successful interposition of the plea of a *bona fide* purchaser had been fulfilled.  Pomeroy Eq. Jur. §§ 417, 740; *Fitzsimmons* v. *Ogden,* 7 Cranch, 2; *Thorndike* v. *Hunt,* 3 De G. & J. 563; *Newton* v. *McLean,* 41 Barb. 287; *Boone* v. *Chiles,* 10 Pet. 209; *Hoult* v. *Donahue,* 21 W. Va. 300; *Basset* v. *Noswontry,* 2 Lead. Cas. Eq. 1; *Knobloch* v. *Mueler,* 123 Illinois, 554; *United States* v. *California Land Co.,* 148 U. S. 31.

The fraud charged in the bill of complaint as against the entrymen was not such a fraud as prevented the passing of the legal title by the patents, and the patents conveyed the legal title.  *Colorado Coal Co.* v. *United States,* 123 U. S. 313; *United States* v. *Detroit Timber & Lumber Co.,* 131 Fed. Rep. 668.

Until issuance of the patent the Government may, through the Interior Department, hold the entry for cancelation, and take proceedings to that end upon notice to the parties interested; but when the patent issued, it took effect as of the date of the inception of proceedings to enter the land.  The patent having issued to the respective entrymen, it became conclusive of their right, and inured to defendant's benefit and related back to the date of the inception of proceedings to enter the land. The patent is conclusive that the Land Department had jurisdiction and that all the steps requisite and necessary to that end had been taken, and the adjudication of the land office is conclusively presumed from the issuance of the patent.  *Silver Bow M. & M. Co.* v. *Clark,* 5 Montana, 424; *Morgan* v. *Daniels,* 153 U. S. 124; *Widdicombe* v. *Childers,* 124 U. S. 405; *Shanklin* v. *McNamara,* 87 California, 378; *United States* v. *Land Company,* 148 U. S. 44; *Heath* v. *Wallace,* 138 U. S. 575; *Johnson* v. *Townsley,* 13 Wall. 72; *Smelting Company* v. *Kemp,* 104 U. S. 636; *Minter* v. *Crommelin,* 18 How. 87; *United States* v. *Amer-*

*ican Bell Tel. Co.*, 167 U. S. 240; *United States* v. *Detroit Timber & Land Co.*, *supra*.

The charges of fraud and illegality in the bill of complaint filed in this case against the entrymen named are wholly unsustained by the proof.

The defendant was an innocent purchaser of the lands, and took title to the same without any notice whatever of the alleged fraudulent and illegal acts of the entrymen named in the bill. He was not bound to make inquiries unless his suspicions were aroused. *United States* v. *Detroit Timber & Lumber Co.*, *supra; Jones* v. *Simpson*, 116 U. S. 609; *Wilson* v. *Wall*, 6 Wall. 83; *Meehan* v. *Williams*, 48 Pa. St. 238.

To annul a patent and destroy the title claimed under it the facts must be clearly proved by evidence entirely satisfactory to the court. *Maxwell Land Grant Case*, 121 U. S. 378; *Colorado Coal Co.* v. *United States*, 123 U. S. 307; *United States* v. *San Jacinto Tin Co.*, 125 U. S. 273; *United States* v. *Des Moines &c. Co.*, 142 U. S. 510.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill for the cancelation of eighty patents for timber lands in Montana, now owned by the defendant, on the ground that the patentees did not purchase the same in good faith for their own exclusive use and benefit, but for speculation and under agreement by which their title should enure to the benefit of another, and that the defendant knew the facts in a general way, if not in detail. Act of June 3, 1878, c. 151, § 2, 20 Stat. 89; extended to all public land States by act of August 4, 1892, c. 375, § 2, 27 Stat. 348.. The defendant pleaded that he was a *bona fide* purchaser, excepted as such from the invalidation of the patents by the act, and denied the material allegations of the bill. Voluminous evidence was taken, and at the hearing the bill was dismissed by the Circuit Court. 125 Fed. Rep. 774. That court found that Clark had no actual knowledge of the alleged frauds or of facts sufficient to put him on inquiry, 125

Fed. Rep. 776, 777, and, considering the requirement of clear proof according to the statement of this court in the *Maxwell Land-Grant Case*, 121 U. S. 325, 381, further was of opinion that the original frauds alleged were not made out. The Circuit Court of Appeals, in view of the pendency of indictments, did not discuss the alleged original frauds, but, assuming for the purposes of decision that they had been committed, confirmed the findings of the Circuit Court with regard to Clark. One judge dissented on the ground that Clark knew enough to be put upon inquiry. 138 Fed. Rep. 294. The United States then appealed to this court.

The bill proceeds upon the footing that Clark has the legal title to the lands in question. The entrymen conveyed to one Cobban, the alleged partner in their frauds, and Cobban conveyed to Clark, all by warranty deeds. It is true that they conveyed before the patents issued, shortly after obtaining the receiver's receipt, but it is assumed that the legal title, when created, followed the deeds. We make the same assumption. *Landes* v. *Brant*, 10 How. 348; *Bush* v. *Cooper*, 18 How. 82; *Myers* v. *Croft*, 13 Wall. 291; *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 322. See, further, *Ayer* v. *Philadelphia & Boston Face Brick Co.*, 159 Massachusetts, 84. But the position is that Clark is privy to the original frauds, and that, even if he is not, inasmuch as he did not purchase on the faith of the patents, he has no better title than the entrymen would have had if the title had remained in them. No distinction is attempted on the ground that the deeds as well as the bargain preceded the patents.

We may assume for the purposes of decision, as did the Circuit Court of Appeals, that the original frauds are made out, although there is a great amount of testimony to good faith. But the point of law just stated has been disposed of by *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321. The United States is attempting to upset a legal title. In order to do that it must charge Clark with notice of the original frauds. The fact that Clark, while he had a merely equitable or per-

sonal claim against the Government, held it subject to any defect which it might have, whether he knew it or not, as generally is the case with regard to assigned contracts not negotiable, was not equivalent to actual notice of the defect. It is recognized in the act of March 3, 1891, c. 561, § 7, 26. Stat. 1095, 1098, that there may be a *bona fide* purchaser before a patent issues. The title when conveyed related back to the date of the orginal entries. Therefore actual notice must be proved.

But so far as actual knowledge or notice on the part of Clark is concerned, both of the courts below found in explicit terms that the proof failed. We perceive no sufficient reason for departing from the rule that, except in a very clear case, where both courts have concurred we do not disturb their findings of fact. *United States* v. *Stinson*, 197 U. S. 200, 207; *The Germanic*, 196 U. S. 589, 595. If ever this rule is to be applied, it should be when those findings are against a charge of fraud and when the effort is to overthrow a patent of the United States. The requirement that the proof should be clear in such a case has been repeated in a series of decisions from the *Maxwell Land-Grant Case*, 121 U. S. 325, to *United States* v. *Stinson*, 197 U. S. 200, 204. There is nothing suficient to show that Clark had actual knowledge of the arrangement by which Cobban got the lands. The allegation that Cobban was Clark's agent in the purchase wholly breaks down. Clark was at a distance. He dealt as a purchaser with Cobban, and paid him the market price, and a substantial profit even on the Government's calculation. So far as any inference was to be drawn from the nearness of the respective dates of the receiver's receipts, the deeds of the entrymen to Cobban and the deeds of Cobban to Clark, it was as open to the officers of the Government as to Clark, if indeed he knew anything about those dates, yet they seem to have suspected nothing, and he was advised by reputable counsel that the titles were good, and bought only on his advice. Clark, his agents and advisers, testify that they did not know or suspect anything wrong.

With regard to constructive notice in addition to the facts .

just mentioned the Government relies on an argument that Cobban began negotiations with Clark before he had acquired title to the lands, not, however, identifying those lands. Assuming this to be true, it requires Clark to have kept that fact in mind when the conveyances were made to him, and noticing the date of the conveyances to Cobban, and of the receiver's receipts, to infer that the negotiations were begun upon a scheme to get the lands from the Government by fraud. It requires an actual and not necessary inference from knowledge, with which Clark may have been chargeable, but which he probably, or at least possibly, did not actually possess. It is argued further that Clark's inspector must have gone upon the land about the time of the entries in order to do the necessary work of estimating the timber. If, for the purposes of argument, we assume that knowledge of a timber inspector of facts affecting the title, with which he had nothing to do, was chargeable to Clark, still the knowledge is a mere guess. There was nothing present or required to be present on the face of the earth to indicate when the entry took place. We cannot infer fraud merely from more or less familiar relations between some of Clark's agents and Cobban. When suspicion is suggested it easily is entertained. But, bearing in mind, as was said in *United States* v. *Detroit Timber & Lumber Co.*, *supra*, that Clark was not bound to hunt for grounds of doubt, and recurring to the canons of proof laid down by the decisions, and to the findings of the courts below, we are of opinion that the decree dismissing the bill must be affirmed.

*Decree affirmed.*


Mr. Justice McKenna concurs on the law on the authority of *United States* v. *Detroit Timber & Lumber Co.*, and concurs on the facts.


Mr. Justice Harlan and Mr. Justice Brown dissent.