## UNITED STATES *v.* PLOWMAN.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 96.    Argued January 20, 21, 1910.—Decided February 21, 1910.

The authority for cutting timber from the public domain under the act of June 3, 1878, c. 150, 20 Stat. 88, extends only to lands valuable for minerals and not to lands adjacent thereto and not actually valuable for minerals.

Although the purpose of a statute may be defeated by its qualifications, courts, in construing it, are bound by words that are explicit and unmistakable in meaning.

151 Fed. Rep. 1022, reversed.

THE facts are stated in the opinion.

*Mr. Assistant Attorney General Harr* for the United States.

There was no appearance or brief filed for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action to recover the value of timber cut from the public domain in Idaho. The defendant justifies under the act of June 3, 1878, c. 150. 20 Stat. 88. That act authorizes citizens of the United States and other persons, *bona fide* residents of certain States and Territories, including Idaho, "and all other mineral districts of the United States," to cut "for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, such lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry" in the State, Territory, or district of their residence. This authority is given subject to regulation by the Secretary of the Interior for the protection of the timber

and undergrowth, and is not given to railroads. The only question before us is how far the authority extends with reference to the specific land upon which the wood is cut.

There was a trial by jury and the issue is exhibited sufficiently by a passage or two from the charge, and the instructions asked on behalf of the Government but refused. The passages from the charge are as follows: "The law cannot be construed to limit the cutting of timber simply to ground that is known to contain mineral, or ground which is or which might be legally located as a mining claim." . . . "The law includes as mineral lands not only those tracts in which mineral has actually been discovered and which has been or could be legally located as mining locations, but also all other lands lying in reasonably close proximity to or in the general neighborhood of such known mineral tracts." . . . "Take, for instance, a large section of country. . . . There in the lower part of the map, as you will see, is a section of country about six miles square; the upper part indicates another section six miles square. We will suppose now there is found here and there in that section of country mineral locations. They may not be contiguous; they may even be some distance apart; but you will be justified, under the law as I have given it to you, in holding all that particular section of country to be mineral ground." . . . "The question for you to decide is not whether those little tracts on that map there—the ground cut over by the defendant—contain mineral, but whether that whole section of country surrounding that for miles around is what may be denominated a mineral country. If you find it is a mineral country within the meaning of the law as I have defined it to you, then your verdict must be for the defendant." The Government asked for instructions that it was not sufficient to show that the land in question was adjacent to lands valuable for mineral purposes, but that the authority given by the act extended only to lands valuable for minerals. It is needless to set them forth at length. There was a verdict and judg-

ment for the defendant.   The ruling and refusals were ex-
cepted to, but the exceptions were overruled and the judg-
ment affirmed by the Circuit Court of Appeals, 151 Fed. Rep.
1022, S. C., 81 C. C. A. 682, on the authority of *United States*
v. *Basic Co.*, 121 Fed. Rep. 504, and *United States* v. *Rossi*,
133 Fed. Rep. 380.   The case then was brought to this court.

The instructions appear to us to have paid too little regard
to the words of the act, defining the land on which it permits
timber to be cut as "mineral, and not subject to entry under
existing laws of the United States, except for mineral entry."
As was said in *Northern Pacific R. R. Co.* v. *Lewis*, 162 U. S.
366, 376, "The right to cut is exceptional and quite narrow,"
and the party claiming the right must prove it.   The only
lands excluded in 1878 or now from any but mineral entry
are lands "valuable for minerals" or containing "valuable min-
eral deposits."   Rev. Stats., §§ 2318, 2319, 2302.   See § 2320.
The matter was much discussed in *Davis* v. *Weibbold*, 139
U. S. 507, and there it was said that the exceptions of mineral
land from preëmption and settlement, etc., "are not held to
exclude all lands in which minerals may be found, but only
those where the mineral is in sufficient quantity to add to
their richness and to justify expenditure for its extraction,
and known to be so at the date of the grant," p. 519.   A Land
Department rule is quoted, with seeming approval, that "if
the land is worth more for agriculture than mining, it is not
mineral land, although it may contain some measure of gold
or silver," pp. 521, 522, citing *United States* v. *Reed*, 12 Sawy.
99, 104.   Again it was said, "the exception of mineral lands
from grant in the Acts of Congress should be considered to
apply only to such lands as were at the time of the grant
known to be so valuable for their minerals as to justify ex-
penditure for their extraction," p. 524.   These are the tests
to which the act of 1878 must be taken to refer, since it refers
to and rests upon the statutes construed to adopt these tests.

It is said that such a construction empties the statute of
all its use, because if the land is known to be valuable for

minerals a mining claim to it will be located, only the owners·
of which can cut the timber, whereas the· statute gives the
right to all residents.   If that were true, courts still would be
bound by the explicit and unmistakable words.   It is not un-
known, when opinion is divided, that qualifications some-
times are inserted into an act that are hoped to make it in-
effective.   But the objection is stated too strongly.   As
pointed out at the argument, in 1878 probably there was a
great deal of mineral land still unexplored on which claims
had not been located, not to speak of mere exceptional cases
in which the act would apply.   The regulations of the Sec-
retary of the Interior for a long time, and it would seem
always, have been in accord with our opinion and the lan-
guage of the act.

*Judgment reversed.*

MR. JUSTICE MCKENNA dissents.