### UNITED STATES v. BEAMAN et al.

(Circuit Court of Appeals, Eighth Circuit. April 6, 1917.)

No. 4280.

1. PUBLIC LANDS ⬧120—PATENTS—MINERAL LANDS—AVOIDANCE.
   While, under Rev. St. §§ 2302, 2318, 2319, 2347, 2351 (Comp. St. 1916, §§ 4591, 4613, 4614, 4659, 4663), lands known at the time of their purchase from the United States to be valuable for minerals are not subject to acquisition under the Homestead Law (Act May 20, 1862, c. 75, 12 Stat. 392), a patent under the Homestead Law for land as agricultural may not be avoided by a suit in equity on the ground that the land was mineral land, unless the conditions were such at the time of the entry and purchase as to then make plain to the entryman and others familiar with the land that it contained mineral deposits of such quality and value and in such quantity as to render the extraction profitable, for the subsequent discovery of minerals on the land will not warrant avoidance of the patent.
   [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335.]

2. PUBLIC LANDS ⬧114(6)—PATENTS—CONSTRUCTION.
   A patent of the United States is an adjudication by the Land Department, a quasi judicial tribunal, and raises a presumption of right and regularity in all the proceedings antedating it, and of perfect title in the grantee.
   [Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 322.]

3. PUBLIC LANDS ⬧114(1)—PATENTS—CONSTRUCTION.
   Where, under the Homestead Law, land is patented as agricultural, such patent is an adjudication of the Land Department that the land is not then known to contain minerals in paying quantities, and of every other fact essential to the validity of the patent.
   [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314, 316.]

4. PUBLIC LANDS ⊂⇒117—PATENTS—COLLATERAL ATTACK.
A patent to land, being a decision of the Land Department, is impervious to collateral attack, and raises a strong presumption that the decision is right.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 324.]

5. PUBLIC LANDS ⊂⇒120—PATENTS—VACATION.
While the government may avoid a patent by a suit in equity for false and deceitful representations, the burden is on the government to establish the fraud by evidence producing a conviction.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335.]

6. PUBLIC LANDS ⊂⇒120—PATENTS—CONSTRUCTION.
Where, in a suit to set aside a patent to lands on which coal was discovered, on the ground that the patent issued under the Homestead Law was obtained through fraud, the decree must be for the defendant, where the evidence was only sufficient to raise an uncertainty as to whether persons familiar with the land knew at the time it was patented that it was valuable for coal.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335.]

7. EVIDENCE ⊂⇒96(1)—BURDEN OF PROOF.
Where complainant established a matter as to which defendant had the burden of proof, defendant is relieved of establishing such fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 119, 121.]

8. VENDOR AND PURCHASER ⊂⇒220—BONA FIDE PURCHASERS—WHO ARE.
No one is bound to assume, and hunt for wrong in the acts of those who have dealt in the title to land he is buying, when that title is fair on its face, in order to secure himself the rights of a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 461–465, 720.]

9. VENDOR AND PURCHASER ⊂⇒229(3)—BONA FIDE PURCHASERS—EVIDENCE.
Defendant, which purchased land valuable for coal deposits, which had been patented some years under the Homestead Law, as agricultural land, held a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 481.]

10. PUBLIC LANDS ⊂⇒120—BONA FIDE PURCHASERS—PATENTS.
Where lands containing valuable minerals were patented under the Homestead Law as agricultural, a subsequent purchaser from the grantee of the patentee, who took in good faith without notice of any possible fraud on the part of the patentee in obtaining the patent, has an equity superior to that of the government, and the patent cannot be vacated.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335.]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Bill by the United States against D. C. Beaman and another. From a decree for defendants, complainant appeals. Affirmed.

Frank Hall, Sp. Asst. Atty. Gen. (Harry B. Tedrow, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Cass E. Herrington, of Denver, Colo. (R. H. Hart, of Denver, Colo., on the brief), for appellees.

Before SANBORN, Circuit Judge, and REED and BOOTH, District Judges.

SANBORN, Circuit Judge. This is a suit commenced August 13, 1909, to set aside a patent to 160 acres of land in Colorado issued to

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Joseph Miskiel on September 8, 1904, and all the conveyances succeeding the patent, on the ground that Miskiel fraudulently entered it as agricultural land under the homestead law (sections 2289, 2291, Revised Statutes [Comp. St. 1916, §§ 4530, 4532]), and acquired it by commutation under section 2301, Revised Statutes (Comp. St. 1916, § 4589), when it was known at the time he purchased it to be valuable for its coal. The defense was a denial that the land was known to be valuable for its coal when Miskiel entered it and bought it, a denial of any fraud or misrepresentation by Miskiel at the time of his entry and purchase and an assertion that the Colorado Fuel & Iron Company, for whom the defendants Beaman and the Colorado Realty Holding Company took and hold the title to it, was on July 8, 1907, a bona fide purchaser of the land from remote grantees of Miskiel, without notice of any fraud or defect in the title. The case went to final hearing, and at the close of the plaintiff's evidence the court below of its own motion, after hearing argument, dismissed the suit on the ground that, assuming, without deciding, that the land was known by Miskiel to be valuable for its coal when he purchased it, the proof was conclusive that the Coal Company purchased and paid in good faith, in July, 1907, $20,000 for the title under the patent without any notice or knowledge, either by itself or by Beaman, who then took the title in trust for it, that there was any fraud in the entry or purchase of the land, or any other defect in the title.

[1] Lands known at the time af their purchase from the United States to be valuable for mineral, and coal is mineral, were not subject to acquisition under the homestead law. Revised Statutes, §§ 2302, 2318, 2319, 2347, 2351. A patent under the homestead law for land as agricultural may not be avoided by a suit in equity on the ground that it was mineral land, unless the conditions were such at the time of the entry and purchase of it as to make the fact plain at that time, to the entryman and others familiar with the land and its condition, that it contained mineral deposits of such quality and value and in such quantity as to render the necessary expenditures to develop, extract and sell them profitable. If at that time the land was not known to be valuable in that way for its mineral deposits, subsequent discoveries, developments, explorations, or mining in that land, or in land in its vicinity, will not sustain an avoidance of the patent. Deffeback v. Hawke, 115 U. S. 392, 404, 6 Sup. Ct. 95, 29 L. Ed. 423; Colorado Coal & Iron Co. v. United States, 123 U. S. 307, 328, 8 Sup. Ct. 131, 31 L. Ed. 182; United States v. Iron Silver Mining Co., 128 U. S. 673, 683, 9 Sup. Ct. 195, 32 L. Ed. 571; Davis's Adm'r v. Weibbold, 139 U. S. 507, 519, 11 Sup. Ct. 628, 35 L. Ed. 238; Dower v. Richards, 151 U. S. 658, 663, 14 Sup. Ct. 452, 38 L. Ed. 305; Shaw v. Kellogg, 170 U. S. 312, 332, 18 Sup. Ct. 662, 42 L. Ed. 1050; United States v. Plowman, 216 U. S. 372, 374, 30 Sup. Ct. 299, 54 L. Ed. 523; Diamond Coal Co. v. United States, 233 U. S. 236, 240, 34 Sup. Ct. 507, 58 L. Ed. 936.

[2-5] Miskiel entered this land under the homestead law on October 20, 1902, and on December 18, 1903, he proved up his case before the officers of the Land Department, commuted his entry, paid cash

for the land and received his final receipt therefor, which entitled him to his patent under section 2301, Revised Statutes. His patent was issued on September 8, 1904, and this suit was brought August 13, 1909, almost six years after he completed his purchase of the land. The United States charges that Miskiel obtained this patent by falsely representing to the officers of the land office, when he proved his case and obtained his final receipt, that the land was not then known to be valuable for its mineral deposits, when the fact was otherwise. A patent of the United States is an adjudication by the quasi judicial tribunal, the Land Department, to which the government has intrusted the determination of the claims of applicants for titles to the public lands, and a conveyance of the title to the lands which the patent describes to the patentee. It raises the presumption of right and regularity in all the proceedings antedating it and of perfect title in the grantee. In the case at bar it was an adjudication of the Land Department that the land it patented was not mineral land, and this and every other adjudication it made that was essential to the validity of the patent was impervious to collateral attack and presented a strong presumption that its decision was right (Roberts v. Southern Pacific Co. [C. C.] 186 Fed. 934, 946; Southern Development Co. v. Endersen [D. C.] 200 Fed. 272, 274, 275; United States v. Winona & St. Peter R. Co., 67 Fed. 948, 957, 15 C. C. A. 96, 105), and while the government may avoid this patent by a suit in equity for false and deceitful representations of material facts which induced its issue, the burden is upon the plaintiff in such a case to prove the facts which establish the fraud it charges, not only by a mere preponderance of conflicting evidence, but by "that class of evidence which commands respect and that amount of it which produces conviction" (Diamond Coal Co. v. United States, 233 U. S. 236, 239, 34 Sup. Ct. 507, 58 L. Ed. 936; Maxwell Land Grant Case, 121 U. S. 325, 379–381, 7 Sup. Ct. 1015, 30 L. Ed. 949; United States v. Iron Silver Mining Co., 128 U. S. 673, 676, 9 Sup. Ct. 195, 32 L. Ed. 571; United States v. Stinson, 197 U. S. 200, 204–205, 25 Sup. Ct. 426, 49 L. Ed. 724; United States v. Clarke, 200 U. S. 601, 608, 26 Sup. Ct. 340, 50 L. Ed. 613; Burke v. Southern Pacific R. R. Co., 234 U. S. 669, 670, 696, 703, 34 Sup. Ct. 907, 58 L. Ed. 1527).

[6] The first question in this case, therefore is: Did the United States present at the hearing below that class of evidence which commands respect and that amount of it which produces conviction, that in 1902 and 1903, when the entry and purchase of this land by Miskiel were made, the conditions were such as to make the fact plain to Miskiel and to others familiar with the land and the surrounding circumstances, that it contained mineral deposits of such quality and value and in such quantity as to make their extraction profitable? The evidence on this subject is voluminous and conflicting. It has been carefully digested, studied and considered. Viewed in the light most favorable to the government, it goes no further than to raise an uncertainty, a doubt in the mind, whether or not any one with all the knowledge those familiar with the land, with the lands in the vicinity, and with the conditions and circumstances surrounding these lands

then had, would have known that the land here under consideration was valuable for its deposits of coal.

[7-10] This conclusion necessarily results in an affirmance of the decree below; but, even if the proof would permit a different answer to the question which has been considered, there is another reason why that affirmance must be adjudged, and that is that the court below found that the Coal Company was a bona fide purchaser of the land without notice of any fraud of Miskiel in procuring the title to it, or of any defect in that title, and the evidence fails to convince that there was any mistake in that finding. The patent was issued on July 8, 1904. On December 21, 1905, Miskiel conveyed the land, by warranty deed which recited a consideration of $8,000, to Farr and McGuire. On July 8, 1907, Farr and McGuire conveyed this land to D. C. Beaman, who took the title to it in trust for the Coal Company. At the hearing below the United States called Mr. Welborn and examined him as its witness. He testified that he was the president of the Coal Company, that he became such in March, 1907, that D. C. Beaman, to whom the land was conveyed, was the general counsel of the company, that he (Welborn) had charge of the negotiations in behalf of the company for the purchase of this land, that the company owned the land on the south and east of it at the time he purchased it, that at that time an abstract of title of this land was procured and he asked Mr. Herrington, the attorney of the company, to look up the title, that Herrington did so and declared it good, that an abstract of title which the government introduced in evidence below was the abstract on which the purchase was made, that he did not consult D. C. Beaman at all about this purchase, that he ordered the title placed in Beaman, that the company paid $20,000 for the land at this time by check and voucher in the usual way, that previous to the commencement of this suit he had no knowledge how the title to the land was obtained from the government, that he did not know Miskiel, that from the time he was elected president until the lands were purchased no one but himself had any authority to make any deals or negotiations as to these lands, and that at the time he purchased them for the company he had never heard or been informed that the lands had been fraudulently obtained from the government.

Counsel for the United States argue that the finding that the Coal Company was a bona fide purchaser should be reversed because the burden was on the defendants to prove it, and they have not done so. But the plaintiff proved it and thereby relieved the defendants of that burden. They contend that the company had constructive notice of Miskiel's alleged fraud because it knew before its purchase that the land was coal land, that opposite the notation of the patent on the abstract, under the word "remarks," the words "Cash Entry No. 8894, made at the Federal Land Office" appeared, and that this notation was notice to the counsel for the company that this coal land was procured under a non-coal form of entry. Conceding that in 1907 the land was known by the company to be valuable for coal, the notation on the abstract was neither sufficient to charge the company or its attorney with notice, or with a suspicion, that the land was procured under the homestead law, or that it was obtained by a fraud upon the govern-

ment in the face of the patent which had been issued and recorded more than two years before and which the government had never assailed. Even if the company had been notified that the land had been procured in 1902 and 1903 under the homestead law, that knowledge would not have imposed upon it any duty to hunt up the patentee, the conditions surrounding the land and the knowledge concerning its value for coal deposits in the years 1902 and 1903 when Miskiel bought it. The patent evidenced the adjudication of the Land Department in 1903 that the land was not then known to be valuable for coal. That decision was impervious to collateral attack. The legal presumption was that all the proceedings leading up to the patent were regular and valid, and that all who had dealt with the property had done so honestly and rightfully. No one is bound to assume and hunt for fraud and wrong in the acts of those who have dealt in the title to land he is buying, when that title is fair on its face, in order to secure himself the rights of a bona fide purchaser. United States v. Detroit Timber & Lbr. Co., 200 U. S. 321, 332, 26 Sup. Ct. 282, 50 L. Ed. 499; United States v. Clark, 200 U. S. 601, 609, 26 Sup. Ct. 340, 50 L. Ed. 613. There was persuasive evidence that the Coal Company purchased and paid $20,000 for this property in reliance upon the patent, without notice of any fraud in its procurement, and there was no substantial evidence to the contrary. The equity of the Coal Company is far superior to that of the United States, and the decree below must be affirmed. United States v. Detroit Timber & Lbr. Co., 131 Fed. 668, 674, 675, 677, 678, 67 C. C. A. 1, 6, 7, 8, 9, and the cases there cited.

It is so ordered.