UNITED STATES v. SAFE INVESTMENT GOLD MINING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 19, 1919.)

No. 5010.

1. PUBLIC LANDS ☞120—SUIT FOR CANCELLATION OF PATENT—FRAUD.
    While the United States has the same remedy in equity for cancellation of a patent for fraud that an individual would have in case of his own deed, it has the burden of proof, and is subject to the same rule that the evidence must be clear and convincing.

2. MINES AND MINERALS ☞45—CANCELLATION OF PATENT—PROOF OF FRAUD.
    Evidence in a suit for cancellation of a mineral patent for fraud *held* insufficient to overcome the presumption in favor of the validity of the patent, or to show that representations made in the application for patent were willfully and knowingly false, or that they were relied on by the government officers.

3. MINES AND MINERALS ☞17(1)—MINING CLAIMS.
    The words "discovery of the vein or lode," as used in Rev. St. § 2320 (Comp. St. § 4615), in prescribing the prerequisites of a valid mineral location, owing to the varying conditions to which the expression must be applied, has no rigidly fixed meaning.

4. PUBLIC LANDS ☞120—SUIT FOR CANCELLATION OF PATENT—ISSUES.
    Where a suit by the government for cancellation of a patent is based upon fraud, plaintiff will be confined as a general rule strictly to that issue.

    Carland, Circuit Judge, dissenting.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by the United States against the Safe Investment Gold Mining Company and Frank Steiskal, trustee. Decree for defendants, and complainant appeals. Affirmed.

George E. Trowbridge, Asst. Sol., Department of Agriculture, of Denver, Colo., and E. W. Fiske, Asst. U. S. Atty., of Sioux Falls, S. D., for the United States.

J. M. Hodgson, of Casper, Wyo., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

BOOTH, District Judge. This is a suit to cancel, for fraud, a patent issued by the United States August 20, 1908, covering 61 lode-mining claims, containing about 1,118 acres, embraced in mineral survey No. 1894, situated in Lawrence county, S. D. The fraud alleged is false representations knowingly made to the officers of the United States General Land Office at the time of the application for the patent. Voluminous testimony was taken before a special examiner appointed by the court. Upon the trial the bill was dismissed upon the merits for want of equity.

The evidence discloses that the Safe Investment Gold Mining Company, hereinafter called the Mining Company, was a corporation organized under the laws of South Dakota. It became the owner of the Pyrites lode-mining claim, mineral survey No. 591, in the county of Lawrence, S. D. Adjoining this Pyrites lode lies the land making up mineral survey No. 1894, involved in this suit. Of the claims going to make up this survey, 8 were located by Ole Christopher, 13 by I. A. Webb, 4 by C. M. Woodbridge, 6 by John Peterson and A. A. Moodie, 20 by J. F. Sawyer and S. Cresswell, and 10 by the Mining Company itself. Apart from the claims located by the company, all but 6 of the others had been located prior to the organization of the company. Webb and Woodbridge were connected with the company from its organization; the other locators had no connection therewith.

Having acquired ownership of the claims, and having caused an official survey to be made of the property, and the same having been designated by the Surveyor General of South Dakota as mineral survey 1894, the company, on November 23, 1905, authorized Webb, one of its directors, as attorney in fact, to make application for a patent, and to take the necessary steps in connection therewith. The application for patent was filed June 29, 1906. The land being within the limits of the Black Hills National Forest, the Forest Supervisor ordered an examination and report. This report was made July 27, 1906, and approved August 2, 1906. On September 4, 1906, a protest against the application for the patent was filed by the Forest Supervisor, but was withdrawn September 26th. On November 30, 1907, the receiver's final receipt was issued. August 20, 1908, the patent issued.

April 28, 1911, the bill of complaint was filed herein. The bill alleged a conspiracy on the part of the officers of the Mining Company

to defraud the United States. The evidence in the record as to a conspiracy is not, in our judgment, sufficient to justify a discussion as to this element of the case. The fraud claimed is alleged to have been committed by the officers of the defendant Mining Company. It centers around I. A. Webb, one of the directors. No fraud is alleged on the part of the officers or employés of the government. The alleged fraud consists of false representations claimed to have been knowingly made in connection with the application for the patent, and relates specifically to two matters—the discovery, required by section 2320, R. S. (Comp. St. § 4615), and the amount expended for labor or improvements required by section 2325, R. S. (Comp. St. § 4622), and amendments thereto.

[1] The rules of law applicable to such cases are well settled.

"The United States has the same remedy in a court of equity to set aside or annul a patent for land, on the ground of fraud in procuring its issue, which an individual would have in regard to his own deed procured under similar circumstances." United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110; McCaskill Co. v. U. S., 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590; Milner v. United States, 228 Fed. 431, 143 C. C. A. 13.

But the burden of proof rests upon the government, even though the establishment of a negative be required; and the evidence must be clear and convincing. In the case of United States v. Stinson, 197 U. S. 200, 25 Sup. Ct. 426, 49 L. Ed. 724, the court said:

"While the government, like an individual, may maintain any appropriate action to set aside its grants and recover property of which it has been defrauded, and while laches or limitation do not of themselves constitute a distinct defense as against it, yet certain propositions in respect to such an action have been fully established:

"First. The respect due to a patent, the presumption that all the preceding steps required by law have been observed before its issue, the immense importance and necessity of the stability of titles depending upon these official instruments, demands that suits to set aside or annul them should be sustained only when the allegations on which this is attempted are clearly stated and fully sustained by proof. Maxwell Land Grant Case, 121 U. S. 325 [7 Sup. Ct. 1015, 30 L. Ed. 949]; Colorado Coal Co. v. U. S., 123 U. S. 307 [8 Sup. Ct. 131, 31 L. Ed. 182]; U. S. v. San Jacinto Tin Co., 125 U. S. 273 [8 Sup. Ct. 850, 31 L. Ed. 747]; U. S. v. Des Moines, etc., Co., 142 U. S. 510 [12 Sup. Ct. 308, 35 L. Ed. 1099]; U. S. v. Budd, 144 U. S. 154 [12 Sup. Ct. 575, 36 L. Ed. 384]; U. S. v. American Bell Tel. Co., 167 U. S. 224 [17 Sup. Ct. 809, 42 L. Ed. 144].

"Second. The government is subjected to the same rules respecting the burden of proof, the quantity and character of evidence, the presumptions of law and fact, that attend the prosecution of a like action by an individual. 'It should be well understood that only that class of evidence which commands respect, and that amount of it which produces conviction, shall make such an attempt successful.' Maxwell Land Grant Case, supra [121 U. S.] 381 [7 Sup. Ct. 1015, 30 L. Ed. 949]; United States v. Iron Silver Mining Co., 128 U. S. 673, 677 [9 Sup. Ct. 195, 32 L. Ed. 571]; United States v. Des Moines, etc., Co., supra [142 U. S.] 541 [12 Sup. Ct. 308, 35 L. Ed. 1099].

"Third. It is a good defense to an action to set aside a patent that the title has passed to a bona fide purchaser, for value, without notice; and, generally speaking, equity will not simply consider the question whether the title has been fraudulently obtained from the government, but also will protect the rights and interests of innocent parties. U. S. v. Burlington & Missouri River R. R. Co., 98 U. S. 334, 342 [25 L. Ed. 198]; Colorado Coal Co. v. U. S., supra [123 U. S.] 313 [8 Sup. Ct. 131, 31 L. Ed. 182]."

To the same effect: Diamond Coal Co. v. United States, 233 U. S. 236, 34 Sup. Ct. 507, 58 L. Ed. 936; Washington Securities Co. v. United States, 234 U. S. 76, 34 Sup. Ct. 725, 58 L. Ed. 1220; Burke v. So. Pac. R. R., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527; Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 Sup. Ct. 339, 59 L. Ed. 637; United States v. Beaman, 242 Fed. 876, 155 C. C. A. 464; United States v. Porter Fuel Co., 247 Fed. 769, 159 C. C. A. 627.

[2] The statements made by Webb in the application for patent which are now challenged for fraud are as follows:

"That in virtue of a compliance with the mining rules, regulations, and customs, by the said Safe Investment Gold Mining Company, applicant for patent herein, has become the owner of, and is in the actual, quiet, and undisturbed possession of the Oregon No. 26 and other lodes, M. S. No. 1894, as herein described, linear feet of the vein, lode, or deposit, bearing gold, together with surface ground 600 feet in width, for the convenient working thereof, as allowed by local rules and customs of miners."

And:

"Deponent further states that the facts relative to its right of possession to said mining claim, vein, lode, or deposit and surface ground so surveyed and platted are substantially as follows, to wit: Discovery, location, and purchase, which more fully appear by reference to the copy of the original record of location and the abstract of title hereto attached and made a part of this affidavit; the value of the labor done and improvements made upon said Oregon et al. lodes, M. S. No. 1894, claim, by it and its grantors, being equal to the sum of five hundred dollars upon and for the benefit of each claim embraced in this survey; and said improvements consist of shafts, drifts, tunnels, and crosscuts."

It is contended by plaintiff that, inasmuch as the land in question was within the limits of a national forest, patent therefor could issue only upon proof of a discovery of mineral in such quantity and of such value as to show the land to be more valuable on account thereof than for national forest purposes. And it is claimed that defendant Mining Company in its application for patent, by the statements above set out, falsely and fraudulently represented that it had made on each of the claims a discovery of mineral of sufficient value to show that the lands were more valuable for mineral than for national forest purposes.

It is further contended by plaintiff that the application for patent, by the statements above set out, falsely and fraudulently represented that a well-defined vein or lode carrying mineral of value had been discovered on the claims in question, whereas in truth no such vein or lode had been discovered. The bill of complaint alleges:

"The plaintiff's said officials believed and relied upon said false and fraudulent representations and were deceived thereby, and were at all times prior to the issuance of said patent in ignorance of the aforesaid fraudulent character of said mineral entries, application, and proofs, and of the character of the said lands, and because of said belief, reliance, deception, and ignorance, and not otherwise, caused the said application to be allowed and the said receiver's receipt, register's certificate, and patent to be issued in the manner and form as herein alleged."

The evidence bearing upon Webb's representation as to discovery was substantially as follows: The land in question was in the min-

eral belt of the Black Hills, and was not dissimilar in character to the formation at the Homestake Mine. The general mineral character of the country was recognized. Gold had been found on the adjoining Pyrites claim in considerable quantities. Twenty-five of the claims included in mineral survey 1894 had been located in the period from 1898 to 1902, and had been acquired by the Mining Company between October, 1904, and March, 1905. The location certificates covering these claims had been filed as required by the statutes of South Dakota, and no question had been raised as to the validity of the locations. Presumptions were in their favor. Discovery holes were dug upon the other claims, in accordance with the statutory requirements. Witnesses for the plaintiff who had worked in digging these holes testified that, while rock in place was found upon these latter claims, there was no true fissure or vein carrying minerals of value; that no free gold was obtained by panning; that assays of samples taken from the discovery holes showed traces of gold. Webb, who was called as witness for plaintiff, testified that his information, from the men who had delved into the ground upon these claims, was that the claims contained ore bodies; that he knew they contained ore bodies; that "there were veins all through there." Witnesses for the plaintiff, who later examined the claims, testified that they found no true mineral-bearing veins or lodes which would pay to mine. Witnesses for the defendant testified that such mineral-bearing veins and lodes did exist, and in some instances contained ore of commercial value; that veins could be traced extending from the Pyrites lode to the Oregon claims. In some instances free gold was obtained by panning estimated to run as high as $3 per ton. Assays made at the instance of the plaintiff showed only traces of gold from samples taken from the various claims; assays made at the instance of the defendant showed gold in quantities, from a trace to $2.80 per ton. Practical miners testified on behalf of the defendant that they found upon the claims such veins as would justify a reasonably prudent miner and prospector in expending time and labor and money in their development; and mining engineers testified on behalf of the defendant that, from an examination of the ground by them, it was their opinion that a reasonably prudent man would be justified in expending time, money, and labor in exploiting and developing and prospecting the property. Mining engineers testifying for the plaintiff reached the opposite conclusion.

[3] Much argument has been devoted by counsel and many authorities cited with a view to determining the meaning which should be given to the words "discovery of the vein or lode" as used in section 2320, R. S.; the purpose being to establish the test by which to determine whether Webb was guilty of knowingly making false representations when he based his application for patent upon "discovery." We do not think an extended discussion of the authorities cited is necessary. They clearly indicate that the expression "discovery of the vein or lode" has no rigidly fixed meaning; and this, of necessity, owing to widely varying conditions to which the expression must be applied.

In Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113, the court, in speaking of the requisites of a valid location, said:

"There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals in it, or in such proximity to it as to justify a reasonable belief in their existence."

In King v. Mining Co., 152 U. S. 222, 227, 14 Sup. Ct. 510, 511 (38 L. Ed. 419), the court, in speaking of section 2320, R. S., said it was—

"in effect, a declaration that locations resting simply upon a conjectural or imaginary existence of a vein or lode within their limits shall not be permitted. A location can only rest upon an actual discovery of the vein or lode."

In Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770, the court said:

"When the controversy is between two mineral claimants the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricultural entry, for the reason that where land is sought to be taken out of the category of agricultural lands the evidence of its mineral character should be reasonably clear, while in respect to mineral lands, in a controversy between claimants, the question is simply which is entitled to priority. * * * But even in such a case * * * there must be such a discovery of minerals as gives reasonable evidence of the fact either that there is a vein or lode carrying the precious mineral, or if it be claimed as placer ground that it is valuable for such mining."

Lindley on Mines, § 336, cites approvingly the definition of Judge Hawley contained in Book v. Justice Mining Co. (C. C.) 58 Fed. 106, 120:

"When the locator finds rock in place, containing mineral, he has made a discovery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that constitutes the discovery, and warrants the prospector in making a location of a mining claim."

It is unnecessary to decide what the exact necessary requirements for the issuance of the patent would have been as to discovery of minerals, if a contest had been instituted. The questions here are whether the representations actually made by the defendant were willfully and knowingly false, and whether those representations were relied upon by the plaintiff. A careful consideration of the whole evidence leads to the conclusion that plaintiff has failed to establish the allegations of the bill in respect to those matters. In view of plaintiff's contentions, set forth above, as to the meaning to be placed upon the statements in the application, it was incumbent upon plaintiff to prove that the statements made by Webb in the application were capable of but one meaning, viz. the meaning now placed upon them by plaintiff, or at least that this meaning was in fact intended by Webb, and that the statements were also understood with the same meaning by the officials of the General Land Office. Conceding, without deciding, that both of the above-stated requirements, contended for by plaintiff, as to mineral value of the land were necessary prerequisites to the issuance of a patent, and that such requirements had

not been met, still the fraud alleged lacks proof. First, there is no evidence that the officials of the Land Office believed that such requirements were necessary, or that the language of the application was intended to make such representations. The register of the United States Land Office where the application for patent was made, who at the time of the application was receiver of the United States Land Office, testifying on behalf of the plaintiff, said:

"The Land Office arrives at the fact that the land is mineral land when the application is made from the mineral survey and the record of the application for patent. The Surveyor General of South Dakota certified it was mineral land before the Land Office passed upon this application for patent. He files this plat, and this plat is filed in connection with this application, certified by the Surveyor General on May 12, 1906."

And further said:

"I would say it is my opinion from the examination made of these papers for application for patent by the mineral clerk, by Mr. Bennett as register, and myself, that all the requirements of the United States statutes had been met by the applicant for this patent."

Mr. Bennett was not called as a witness.

Secondly, there is an affirmative showing by plaintiff that Webb, at the time of the application for a patent, did not believe that the requirements now contended for by plaintiff existed under the law and practice. If Webb did not believe that such requirements existed, then, clearly, plaintiff, by putting such a construction on the language of the application as would make Webb represent as actually existing a condition of affairs which he did not believe necessary to exist, and then by showing that such requirements had not in fact been fulfilled, has not furnished the required clear and convincing proof of the alleged willful fraud.

As to the alleged fraud touching the improvements, the evidence shows that the expenditures were made upon the Pyrites lode and mineral survey 1894 in accordance with the group theory; if this theory was applicable, there can be no doubt that the required amount was expended.

Upon the question whether the expenditures for improvements upon the Pyrites lode could be properly said to be for the benefit of mineral survey 1894, the evidence is conflicting; but the presumptive force of the certificate of the Surveyor General of South Dakota has not been destroyed, and this certificate, covering the matter as it does, must be taken as conclusive. United States v. Iron Silver Mining Co., 128 U. S. 673, 685, 9 Sup. Ct. 195, 32 L. Ed. 571; United States v. King, 83 Fed. 188, 27 C. C. A. 509.

It is the claim of the plaintiff that the alleged fraudulent scheme was devised and carried out with a view to securing the land within mineral survey No. 1894 for the sake of getting the timber thereon, which, it is alleged, was worth, standing $27,000. As tending to establish fraud, plaintiff calls attention to testimony that the presence of timber upon the land had been remarked upon by Webb and others connected with the Mining Company prior to the application for patent, and that Webb had instructed the man who dug the discovery

holes to locate all the ground he could get in there, and also put in the timber, and to Webb's testimony that one purpose of locating these claims was to keep others from getting the ground next to the Pyrites lode. But such facts do not of themselves establish fraud. As was said in United States v. Iron Silver Mining Co., 128 U. S. 673, 684, 9 Sup. Ct. 195, 199 (32 L. Ed. 571), in reference to similar facts:

"A prudent miner, acting wisely in taking up a claim, whether for a placer mine or for a lode or vein, would not overlook such circumstances, and they may in fact control his action in making the location."

Furthermore, this timber was largely on the claims which had been located by parties not connected with the Mining Company and which had been afterwards purchased by it. Still further, the evidence shows that the expenditure of more than the amount stated as the value of the timber had been made upon or for the benefit of mineral survey 1894 prior to the application for the patent, and that subsequent to the application several times that amount was spent upon the Pyrites lode and mineral survey 1894 as a group. In the light of such evidence, the probability of the existence of the alleged fraudulent scheme for the purpose of obtaining the timber is reduced to a minimum. Certainly the evidence does not meet the required standard.

[4] It is finally claimed by the plaintiff that, though the evidence fails to establish fraud, yet it establishes a mistake on the part of the Interior Department in issuing the patent, and that for this reason the patent should be canceled. It is sufficient to say, as to this contention, that no such issue is presented by the bill of complaint, and that, when a suit of this character is based upon fraud, the plaintiff will be confined, as a general rule, strictly to that issue. Eyre v. Potter, 15 How. 42, 55, 14 L. Ed. 592; French v. Shoemaker, 14 Wall. 314, 335, 20 L. Ed. 852; Wall v. Parrot Silver & Copper Co., 244 U. S. 407, 37 Sup. Ct. 609, 61 L. Ed. 1229; Reed v. Munn, 148 Fed. 737, 80 C. C. A. 215.

As these conclusions dispose of the case, it is not thought necessary to determine other questions arising upon the record and discussed by counsel in their briefs.

Judgment affirmed.

CARLAND, Circuit Judge (dissenting). A consideration of the evidence in this case has satisfied me that the patent for M. S. 1894 should be canceled as against the Investment Company for fraud. The defendant Steiskal, who was the trustee for the bondholders under the mortgage executed by the Investment Company, now holds the title to the land in controversy as trustee. This appears, not only from the evidence, but by the terms of the deed on foreclosure. The complaint of the plaintiff being on file when the foreclosure proceedings were had, no additional rights accrued to the bondholders than those they possessed under the mortgage. The trustee as such cannot be an innocent purchaser of the land.

It appears in a general way that about $75,000 in bonds were issued by the Investment Company under the mortgage, but it does not appear

by whom they are held, or the circumstances under which they were acquired. There is no allegation in the complaint that there are any innocent bondholders; the allegation in this behalf being confined to the trustee. We cannot, for want of allegation and proof, determine whether there are any innocent bondholders. The decree below should be reversed, and a decree entered canceling the patent to M. S. 1894 as against the Investment Company, but preserving the title of Steiskal as trustee in behalf of those bondholders who shall come in and by proper pleading and proof show themselves to be innocent bondholders for value under the mortgage. If no such bondholders shall come in, then the title of Steiskal as trustee shall be also canceled. If innocent bondholders do come in, sufficient land should be sold to satisfy their claims; all matters necessary to carry out our judgment being left to the trial court.